JESSE FRENCH PIANO & ORGAN COMPANY *et al. v.*
HALLBERG *et al.*

(*Knoxville.* September Term, 1914.)

1. **LANDLORD AND TENANT.** Forfeiture of lease. Equitable estoppel.

Where a lease prohibited assignment, and the corporate lessee upon dividing its assets assigned the lease to stockholders, who thereafter carried on the business, making a studied effort to prevent the public from realizing that the business was no longer that of the original corporation, the lessors who did not know of the change, or of the assignment, are not estopped to claim a forfeiture because they received checks in payment of the rent, signed by the successor of · the original lessee. (*Post, pp.* 652-657.)

2. **LANDLORD AND TENANT.** Leases. Stipulations.

A stipulation in a lease that, should the lessor rightfully seeking to recover possession, be obstructed, and litigation ensue, the lessee should pay the lessor a reasonable attorney's fee, is valid. (*Post, pp.* 657-659.)

Cases cited and approved: Richards v. Bestor, 90 Ala., 353; Talbott v. English, 156 Ind., 300.

3. **LANDLORD AND TENANT.** Validity of lease. Estoppel to deny.

Where the lessees asserted that the lessors were bound by a lease, although executed by their agent, and the lessors asserted the negative, the lessees are estopped to deny the validity of the lease and the right of the lessors, who though entitled to possession, were obstructed, to recover a reasonable attorney's fee in accordance with a condition in the lease. (*Post, pp.* 659, 660.)

4. **INJUNCTION. Bond. Liability of surety.**

Where a lessor, though entitled to possession, was enjoined from continuing an action of unlawful entry and detainer, the surety on the injunction bond is liable for a reasonable attorney's fee as part of the damages caused by the injunction, where the lease provided that if the lessor was wrongfully obstructed in a rightful attempt to retain possession, the lessee should pay a reasonable attorney's fee. (*Post*, p. 660.)

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —T. M. McConnell, Judge.

Allison, Lynch & Phillips and John H. Early, for complainants.

White & White and George W. Chamlee, for defendant.

Mr. Chief Justice Neil delivered the opinion of the Court.

A short time before the original bill in the present case was filed Hallberg and wife began a suit of unlawful entry and detainer against the Starr Piano Company, to recover possession of a business house, known in the record as "722 Market Street." The original and amended bills were thereupon filed by the complainant, whose name appears in the caption, along

with the Starr Piano Company, the other complainant. The purpose of these bills was to enjoin the suit of unlawful entry and detainer brought before a justice of the peace, on the ground of certain alleged equities which it was claimed could not be properly presented in an action at law. The chancellor ordered an injunction to issue, but subsequently, as a condition of allowing this injunction to stand, it was required of the complainants that judgment be confessed in the law case, which was to be held under the control of the chancellor in the present case. This order further provided that the chancery court should have the right to issue a writ of possession in behalf of the defendants in case a decision should finally be rendered in their favor. On final hearing a decree was entered in favor of the complainants, perpetually enjoining the suit at law and declaring that the complainants were entitled to the possession of the property under a certain lease referred to in the pleadings. The case was then carried by appeal to the court of civil appeals, and that court affirmed the decree of the chancellor. A petition for the writ of *certiorari* was then filed to bring the case to this court, and it is now here and has been examined by us with full consideration of the record and of all the briefs filed by the respective parties.

The court of civil appeals found as the facts that in September, 1909, one Twinum had leased the property in question to the Jesse French Piano & Organ Company for five years, beginning September 1, 1909, at a

monthly rental of $200, with the privilege of renewal at the expiration of the lease for an advanced rental of $225 per month; that this lease was adopted by the defendant Mrs. Hallberg, who, with her sister Mrs. Twinum, at that time owned the property; that the lease contained a provision against the assignment thereof and contained a clause of forfeiture for violation of this clause and other clauses of the contract.

The court of civil appeals further found that on October 13, 1910, the Jesse French Piano & Organ Company assigned this lease to Henry Gennett and his children; that the Gennetts owned half of the capital stock of $500,000 in the said Jesse French Piano & Organ Company, and the O. A. Field family owned the other half; that it was determined by these two families to divide the assets of the said Jesse French Piano & Organ Company; that accordingly a paper writing was entered into between the Jesse French Piano & Organ Company and the said Gennetts, whereby half of the assets were transferred and assigned to the said Gennetts, and the $250,000 stock held by the Gennetts in the Jesse French Piano & Organ Company were turned over and canceled and retired; that among these assets was the property belonging to the business of the Jesse French Piano & Organ Company in Tennessee and some other States and, among other things, the said lease; that it was a part of the contract between the Jesse French Piano & Organ Company and the Gennetts that the former would do no business in Tennessee for the space of five years; that thereafter the

business in Chattanooga was conducted in the name of the Starr Piano Company; that the Starr Piano Company was owned by the Gennetts.

The court of civil appeals further found and held that the assignment of the lease to the Gennetts was of such a character as to justify the defendants in declaring a forfeiture of the lease, but that said defendants were estopped from forfeiting the lease because they, or their agent, C. M. Preston, managing their business, had knowledge that the business in Chattanooga was being transacted in the name of the Starr Piano Company.

The court of civil appeals finds that the defendants did not know as a fact that the assignment had been made.

There is no evidence in the record to sustain the finding of the court of civil appeals, to the effect that the defendants, or their agent, C. M. Preston, knew that the Starr Piano Company had become the successor of the Jesse French Piano & Organ Company in the sense in which the finding is set out in the opinion of the court of civil appeals.

It is true that Mr. Preston knew that the rent was being paid by checks issued in the name of the Starr Piano Company. He did not know, and the defendants did not know, the relation existing between that company and the Jesse French Piano & Organ Company, nor by what authority the Starr Piano Company was occupying the house. Mr. Preston testifies that he considered the Starr Piano Company and the Jesse French

Piano & Organ Company all one and the same thing. The defendants themselves knew nothing about it. Mr. Preston's view of the matter was fully justified by the way the matter was managed by the agents of the Starr Piano Company. There was a studied effort on the part of the Starr Piano Company not to let the public fully know what these relations were. The manager of the business at Chattanooga, Mr. D. M. Coleman, testified he did not know fully what these relations were. He testifies that the signs on the building were changed very gradually, there being still left on the building the name of the Jesse French Piano & Organ Company, but there was another sign making more prominent the name of the Starr Piano Company. There is in the record a letter from Mr. Street, the district manager of the Starr Piano Company at Nashville, in which he instructs Mr. Coleman, the manager at Chattanooga, to use the name of both the Jesse French Piano & Organ Company and of the Starr Piano Company in their advertisements. It also appears that the books and stationery were not altogether changed; some of the books in the house, the account books, ledgers, etc., even at the time the depositions were taken, still bore the name of the Jesse French Piano & Organ Company. The collections outstanding were made in the name of the Jesse French Piano & Organ Company. New business was conducted; that is to say, when new sales were made, the notes were taken in the name of the Starr Piano Company. So it was, this purposely mixed way of conducting the business con-

tinued, and the defendants were not advised of the true state of the business between the two companies. It is no doubt true that the Starr Piano Company was using this method for the purpose of confusing the public, not with a view to any fraud, but in order to hold the custom that had previously been acquired under the name of the Jesse French Piano & Organ Company. Nevertheless, the public must have been unable to determine exactly to whom the business belonged.

Now it is, under facts like these, that it is said by the court of civil appeals that the defendants, by receiving checks for rent in the name of the Starr Piano Company, were estopped to complain of the transfer made to Henry Gennett and his children, of which they had no knowledge.

It is said in the opinion of the court of civil appeals that the Gennetts were conducting the business under the name of the Starr Piano Company as a trade name, and there is a statement to this effect in the testimony of the witness Gennett. But it appears in the record that the Starr Piano Company is a corporation. It is true that the Gennetts owned all of the stock, but still a corporation is a separate entity, a thing distinct from its stockholders, therefore nothing more could have been meant than that the stockholders of the Starr Piano Company were operating under its corporate name the assets acquired from the Jesse French Piano & Organ Company. But let it be assumed that the Gennetts were themselves in their personal capacity managing these assets, using simply the name of the

Starr Piano Company as a trade name, and not as a corporation; still this fact was not known to the defendants, and they could not be bound by it.

We think that the record shows beyond any kind of controversy that neither the defendants nor Mr. Preston knew the real facts of the assignment of the lease and the relation in which the Starr Piano Company stood to that matter. It, therefore, must be true that they could not be held to have waived their right to declare a forfeiture when they did not know the facts on which the exercise of the right depended.

It follows that the decree of the chancellor and of the court of civil appeals must be reversed, and a decree entered here adjudging the right of possession in the defendants, and awarding a writ of possession pursuant to the confession of judgment in that regard before the chancellor, as already stated.

The writ of possession will not be issued, however, until the expiration of ten days from the entry of this decree.

The complainants will pay the costs of the proceeding.

### SUPPLEMENTAL OPINION.

After the foregoing opinion was handed down a form of a decree was offered by the parties, and its terms agreed on, in all respects, by both litigants, except as to one matter.

The decree was so prepared as to order a reference on the injunction bond and a remand of the cause to

130 Tenn. 42

the chancery court of Hamilton county, to the end that this reference might be executed. The points of reference are thus stated in the decree:

"(1) The amount of damage, if any, that has been sustained by the defendants Hallberg and wife by reason of the suing out of the injunction in this cause.

"(2) What would be reasonable and fair compensation to allow the defendants Hallberg and wife for attorney's fees incurred by them in the prosecution of their right to obtain possession of the premises in controversy in this cause and in the proceeding before the justice of the peace in the action of unlawful detainer; the court being of the opinion and adjudging that, under the eighth stipulation of the lease, the defendants are entitled to recover what would be a reasonable and fair compensation to be paid them for the employment of attorneys and solicitors to prosecute the suit before the justice of the peace, and to defend this injunction bill."

Complainants make objection to the second item of the reference, and upon this matter briefs have been filed by counsel on both sides of the controversy.

The eighth paragraph of the lease reads as follows:

"Should the lessor at any time rightly seek to recover possession of the premises, and be obstructed or restricted therein, and any litigation thereon ensue, the lessee should be bound to pay the lessor a reasonable attorney's fee."

We see no objection to this stipulation in the lease, any more than in a promissory note, and the latter has

been repeatedly held in this State to be a proper term in such an instrument.

As to the appearance of this term in a lease it is said in 2 Tiffany on Landlord and Tenant, sec. 301:

"There are occasional decisions recognizing the validity of a provision in the lease for the recovery by the lessor of expenditures by him on account of attorney's fees, in case it becomes necessary to sue by reason of the lessee's default, and, in the absence of a statute bearing on the subject, there is evidently no objection to such a stipulation."

In *Richards* v. *Bestor*, 90 Ala., 353, 354, 8 South., 30, it appeared that the lease contained a stipulation that the defendants should be "taxed with attorney's fees, in the event of the employment of an attorney on account of the violation of any of the conditions of the lease by them." It was held that under this stipulation plaintiff was entitled to recover reasonable attorney's fees. In *Talbott* v. *English,* 156 Ind., 300, 59 N. E., 857, a similar provision was upheld.

It is insisted, however, by complainants that defendants Hallberg and wife were not parties to the lease.

The lease, on its face, was between John C. Twinum as lessor and the Jesse French Piano & Organ Company as lessee, but Twinum was acting for Mrs. Hallberg as well as for Mrs. Twinum, and one of the controversies all through the record was whether Hallberg and wife were bound by the lease; complainant insisting they were and defendants that they were not. The court held, as is seen from the preceding opinion, that

Mrs. Hallberg was bound by the lease, and allowed a recovery only on the ground that its terms had been violated by the assignment contrary to one of its provisions.

So it is, the Jesse French Piano & Organ Company, claiming under the lease, without authority assigned it to the Gennetts, and they, owning all the stock of the Starr Piano Company, assumed to act under that assignment, claiming possession of the property. When the suit of unlawful detainer was brought the Jesse French Piano & Organ Company and the Starr Piano Company resisted the effort of the Hallbergs to obtain possession, and restrained them by injunction.

Under these facts we think both the Jesse French Piano & Organ Company, and the Starr Piano Company would be estopped to deny the binding effect of the terms of the lease, both that against assignment and the liability to pay attorney's fees in case the lessor's right to obtain possession should be improperly obstructed. The surety on the injunction bond by decoming so directly aided both of these complainants to secure this delay, and we think the attorney's fees must be considered a part of the damages contracted for. There can be no doubt of this, inasmuch as the lease was made an exhibit to the original bill, and thereby the surety on the injunction bond was fully informed of the nature of the liability it was incurring.

The result is that the decree will be entered as written.