This is an appeal from the district court of Pittsburg county. The parties will be referred to as they appeared in the trail court, Robert Vaughn, plaintiff in error, as defendant, and Cleve Gardner, defendant in error, as plaintiff.
Plaintiff commenced his action in the district *Page 36 
court of said county to recover his share of the crop raised by him, on land owned by defendant for the year 1928, under a verbal contract. One hundred and twenty-five acres of the farm were put in cotton and 29 acres in corn. Plaintiff was to do all the work and defendant to furnish everything, including groceries, teams, tools, and extra help. The crop was to be divided, half and half, but out of plaintiff's half, plaintiff was to pay for the groceries advanced and for extra help. It appears from the record that, on July 4, 1928, plaintiff had finished the third plowing of 125 acres of cotton, and that the 29 acres of corn had already been "laid by," that is, finished. On the morning of July 5th plaintiff was without any groceries, borrowed enough flour from defendant for his breakfast, and was preparing to go to Kiowa to get some groceries. A controversy arose between plaintiff and defendant as to whether the cotton needed plowing or chopping. Arising out of this controversy, it appears that defendant told plaintiff he could either "come, take the team at once and plow or get out and stay out." Plaintiff states that he did not want to be hurt and obeyed the defendant and left. The evidence shows that plaintiff is a poor, ignorant full-blood Indian. The record also shows that defendant took charge of the crop, gathered 550 bushels of corn, and picked 50 bales of cotton, which were sold for $4,470. Estimating the corn at 50 cents per bushel, or $275, the crop had a total value of $5,045.80, one-half of which amounts to $2,522.90. After deducting all expenses, of groceries furnished plaintiff, gathering corn, and picking cotton, there was a net balance in the sum of $756.63, and plaintiff contends he was entitled to one-half of said net balance. The verdict of the jury was in favor of the plaintiff for $300.
Counsel for defendant rely on two specifications of error as follows:
"(1) That the court erred in permitting evidence to be introduced on material evidence not pleaded.
"(2) In overruling the demurrer of defendant at the close of the evidence and in refusing to direct a verdict in favor of this defendant."
An examination of this record shows that plaintiff alleged in his petition that, by reason of the fact that there were no groceries for the family, plaintiff was preparing to go to Kiowa to get groceries for the family in order that they might continue at the work of farming; that about the time he was ready to go for his groceries, said defendant came to his house and demanded that plaintiff go to the field to work; that plaintiff advised the defendant that he was entirely out of supplies, without anything to eat, that the family had nothing for dinner, nothing for supper, and that as soon as he returned from Kiowa with some groceries, he would continue to work; that defendant advised plaintiff, if he left for groceries, that said defendant would take charge of the crop and would not let plaintiff have anything to do with said crop, and notified plaintiff to stay off said premises; that defendant immediately took charge of said crop; that defendant continued to exclude plaintiff from entering said premises, and forbade him from having anything to do with his crop thereafter; that defendant refused to furnish plaintiff with a team, farm implements, and any further supplies; that defendant took complete charge and control of said crop, finished the cultivation of said cotton, gathered the corn and picked the cotton, all in violation of the terms and conditions of their rental contract.
Plaintiff's evidence in part is as follows:
"Mr. Keith: — Tell the court and jury all the conversation you had with Mr. Vaughn relative to your work? A. Well, he just wanted me to plow that morning, the 5th of July, you know, and I had worked all day on the 4th, and anyway it didn't need plowing and I wanted to get some groceries, and I told him what I am going to do to-day, 'I am going in to get groceries to eat,' and he said, 'I want you to plow,' and I said, 'Robert, there is not a bit of use to plow,' and he said, 'I will go in and plow and work the crop myself, to suit myself,' and I never said any more to him, we got mad and I just let him alone then. Q. He was out of humor, was he? A. Uh? Q. He got mad, did he? A. He talked like it. Q. You thought he was mad? A. Yes, and I went on and I went in to Kiowa and I seen him in his car in the street hiring hands to take them over to plow, I went and told Doc Harris down there and I said to him 'Do you think —' * * * Q. What did you do when you got over there? A. Well, I went where they were plowing and when we got out of the car and she
stopped me. — Q. Who stopped you? A. Robert, and he said 'Do you want to plow after dinner, and if you ain't, get out of this field and stay out,' I told Buck it looked like she
already got possession and I said, 'Let's look at the crop.' Q. When Mr. Vaughn made that statement to you, did he seem to be in a good humor or not? A. No, don't like he was in a good humor."
There was no material departure from the pleadings in this case, and defendant did not plead surprise, and asked for no continuance. At the close of plaintiff's evidence, plaintiff moved the court for permission to amend his amended petition so as to conform to the *Page 37 
evidence or proof, and said motion was sustained by the court. The contention of defendant on his first specification of error is without merit.
Counsel for defendant contends, under his second specification of error, that the court erred in not sustaining a demurrer to the evidence, and in refusing to instruct a verdict in favor of the defendant for the reason that there was no legal eviction.
Counsel for plaintiff contends that there was a constructive eviction, and that this was a question for the jury, and that no instruction was requested on this question and none was given.
In the case of New State Brewing Ass'n v. Miller,43 Okla. 183, 141 P. 1175, this court stated:
"It is well settled that whether there has been a constructive eviction depends upon the facts and circumstances of each particular case, and is a question of fact for the determination of the jury. Rice v. Dudley, 65 Ala. 68; Warren v. Wagner, 75 Ala. 188, 51 Am. Rep. 446; Hayner v. Smith,63 Ill. 430, 14 Am. Rep. 124; Lynch v. Baldwin, 69 Ill. 210; Talbott v. English, 156 Ind. 299, 59 N.E. 857; Hall v. Irvin,78 App. Div. 107, 79. N.Y. Supp. 614. Under the liberal rule in this jurisdiction, we think there was sufficient evidence to take the case to the jury on the question of constructive eviction."
In reference to the evidence on the question of eviction, the plaintiff testified, in part, as follows:
"Q. Who stopped you? A. Robert, and he said, 'Do you want to plow after dinner, and if you ain't, get out of this field and stay out.' I told Buck it looked to me likes he already got possession. * * * Q. And you and him couldn't agree on that? A. No, sir; he wanted me to go ahead right then and plow, and I said, 'I am going to Kiowa and get some groceries.' Saturday, then, I told that boy of mine, 'you go and tell Robert if he want to buy the crop,' and that boy of mine said, 'Robert Vaughn said he had possession of my crop. He took possession and throwed me out without a penny and no place to go.' Q. What did you do then? A. I never do anything, I moved. Q. Why did you move? A. I didn't want no trouble. Q. Were you afraid of him? A. No, I ain't afraid, but I didn't want to be hurt. Q. You thought you would have trouble if you stayed? A. Yes. Q. And that is the reason you left? A. Yes. Q. What condition was the crop in as to, growth? A. Well, the cotton was in pretty good shape. * * * Q. Did you quit on account of the difference between you and Mr. Vaughn? A. Quit because she told me to stay out and I have my idea when a man tells you to stay out, he don't mean to come back. This is my idea. I don't know anything about it but that is my idea. Q. Did you go back on the place any more after that, to do any more work on the place? A. No, sir. Q. You left? A. I left."
The question of constructive eviction in this case was a question of fact for the determination of the jury, and the jury found these issues in favor of the plaintiff. In other words, the jury found that the acts of the defendant were such that the plaintiff was justified in relinquishing possession of the premises by reason of the interference of this possession and enjoyment of the premises on behalf of the defendant.
Counsel for defendant also urge that the court erred in not sustaining a demurrer to the evidence and in refusing to instruct the jury to return a verdict for the defendant, for the reason that all parties in interest had not been joined, contending that defendant had made a contract with plaintiff and with Jim Reading. It was the theory of plaintiff that Jim Reading was a necessary party under section 220, C. O. S. 1921, which provides as follows:
"All interested to be joined. All of the parties to an action, those who are united in interest must be joined." * * *
The evidence indicates that the plaintiff made his contract for renting the land with the defendant, and that Jim Reading had made arrangements with the plaintiff to assist him in farming the land, and made arrangements wherein plaintiff and Jim Reading were to divide the crop between them after paying for the groceries and expenses. The evidence shows that Jim Reading, after working under these arrangements for a short time, quit, and the plaintiff was required to take his boy out of school to assist him in the care of the crop. Jim Reading quit working for plaintiff prior to planting the crop, but had assisted in plowing the land. Jim Reading was a witness on behalf of defendant and he stated as follows:
"Q. Do you remember about how much of the crop was done when you quit? A. Well, we had about half of it broke, I guess; may be a little over. Q. And you left the crop? A. I quit. Q. And when you left, what did you do with your interest in the crop? A. I turned it over to him. Q. Turned it over to Cleve? A. Yes, both of them, I just walked off and left it. * * * Q. You have never been paid? A. No, didn't want nothing. * * *"
Jim Reading, by his testimony, has disclaimed any interest in the crop.
No objections were made to the instructions *Page 38 
of the court to the jury. The jury was fully advised as to the issues, and found from the facts and circumstances in the case that the plaintiff was entitled to recover in this case. The trial court approved this verdict, and we find no reversible error in the record. The judgment of the trial court is affirmed.
LESTER, C. J., and CLARK, V. C. J., and SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. RILEY, HEFNER, and CULLISON, JJ., absent.
Note. — See under (1) annotation in 5 L. R. A. (N. S.) 855; 16 R. C. L. 686; R. C. L. Perm. Supp. p. 4124; R. C. L. Pocket Part, title "Landlord and Tenant," § 171.