George **TALBOT, Jr.**, Plaintiff-Appellant,

v.

The **CITIZENS NATIONAL BANK OF EVANSVILLE**, Defendant-Appellee.

No. 16438.

United States Court of Appeals
Seventh Circuit.

Jan. 30, 1968.

Joseph B. Minor, Evansville, Ind., for plaintiff-appellant.

Willard C. Shrode, Evansville, Ind., for defendant-appellee.

Before HASTINGS, Chief Judge, and KNOCH, Senior Circuit Judge, and FAIRCHILD, Circuit Judge.

HASTINGS, Chief Judge.

Plaintiff-appellant George Talbot, Jr. appeals from a summary judgment entered in favor of defendant-appellee Citizens National Bank of Evansville on a complaint for damages for breach of a lease. Appellant also appeals from the denial of his motion for summary judgment.

Although appellant contends there were genuine issues of fact for trial, we find, after reviewing the record, no genuine dispute concerning a material fact.

In 1945, appellant's predecessor in interest, Talbot Corporation, leased space in an Evansville, Indiana shopping center to appellee for use as a branch bank. On December 12, 1952, Talbot Corporation and appellee executed a new lease which described the leased premises by metes and bounds, adding "commonly known and designated as 1925 Lincoln Avenue, together with any and all buildings and improvements located thereon." Appellant subsequently acquired the reversion.

The lease was for a term of fourteen years. It gave appellee the right to remove "all trade fixtures installed by it, including heating equipment * * *" at the termination of the lease and required appellee to remove a permanently-installed bank vault, if requested to do so by appellant. It further provided that upon termination all improvements "except furniture, trade fixtures and equipment which may be removed without substantial damage to the premises" should be surrendered by appellee.

As described in terms of metes and bounds, the leased premises consisted of the land occupied by a building and a 5.45 foot strip of land along the west side of the building. The 5.45 foot strip was occupied by a walk, which ran alongside

the building, and a portion of a parking lot used by customers of appellee and other businesses in the shopping center.

In 1945 or 1946, a boiler and an air conditioner were installed, at appellee's expense, in the leased building. These units were connected to the building's heating and cooling systems.

On March 7, 1966, appellee notified appellant that it did not intend to renew the lease. On July 27, appellant requested appellee to remove the bank vault.

Appellee discontinued its banking operations on the leased premises on August 12, 1966, three and one-half months before the expiration of the lease. Appellee's banking facilities were moved to a new location approximately fourteen blocks away.

Pursuant to an agreement with appellant, Old National Bank of Evansville installed a mobile banking unit at appellant's shopping center on August 15, 1966. The mobile banking unit encroached on the 5.45 foot strip of land west of the building on the leased land.

On the day the mobile banking unit was installed, appellee's attorney, in the presence of appellant's attorney, informed appellant by telephone that the mobile banking unit had been installed and requested that it be removed before noon on August 17,[1] two days later.

Appellant did not cause the mobile banking unit to be moved.

By letter of August 19, 1966, appellee stated to appellant that appellant's action "in permitting a competitor bank to move a mobile trailer and to erect improvements on our leased premises, and parking lot facilities" constituted a breach of its lease. Appellee expressed the belief that the breach was substantial and notified appellant that it elected to rescind the lease and vacate the leased premises. Appellant received such letter on August 23.

Appellee promptly vacated the premises, removing the boiler and air condi-

tioner. It made no further rent payments and did not remove the vault.

Appellant did not request Old National Bank to move its mobile banking unit until November 15, 1966, after a survey indicated that the unit encroached on the premises described by metes and bounds. The request was ignored by Old National.

Appellant filed its action on December 1, 1966, asking that the lease be forfeited and that damages in the amount of $28,900 be awarded for the expense of removing the vault, the unpaid rent, and the deprivation of use of the property while the vault was being removed. By a supplemental complaint filed January 10, 1967, appellant requested damages in the amount of $2,517.50 for the removal of the boiler and air conditioner.

Appellee moved for dismissal of the cause on December 20, 1966, for failure to state a claim for which relief could be granted, attaching an affidavit to the motion. Appellant moved for summary judgment on March 24, 1967.

The trial court treated appellee's motion as a motion for summary judgment, as provided by Rule 12(b), F.R.C.P., 28 U.S.C.A., and on June 29, 1967, entered summary judgment for appellee and denied appellant's motion for summary judgment. The district court concluded that appellant's action in permitting a third person to take possession of part of the leased premises was a material breach of the lease, and that appellee effected a lawful rescission by its letter of August 19. The court held that the rescission terminated appellee's obligations to pay rent and to remove the vault. Finally, it held that the removal of the boiler and air conditioner was authorized by the express terms of the lease.

Appellant advances several arguments for reversal of the judgment below.

He contends the description of the leased premises is ambiguous and that in construing the lease reference may be made to extrinsic evidence of the parties'

---

1. Appellant disputes appellee's contention that notice was given of the encroachment on the leased premises. He states that appellee complained of the placing of the mobile banking unit on the shopping center parking lot.

intent. Their intent, he asserts, was that the leased premises include only the building and the land occupied by it.

Appellant finds ambiguity by comparing the metes and bounds description with the phrase "commonly known and designated as 1925 Lincoln Avenue." He contends that the phrase limits the leased premises to the building and the land it occupies.

■ Appellant's argument on this proposition is without merit. Under Indiana law, which governs this diversity case, a general descriptive statement in a conveyancing instrument yields to a particular and specific description. Tolleston Club of Chicago v. Clough, 146 Ind. 93, 43 N.E. 647 (1896); Gano v. Aldridge, 27 Ind. 294 (1866); Jacqua v. Heston, 81 Ind.App. 142, 142 N.E. 874 (1924). The term "1925 Lincoln Avenue" is a general description and must yield to the description in metes and bounds.

Appellant further argues that the encroachment on the 5.45 foot western strip of the leased premises did not entitle appellee to rescind the lease and abandon its obligations under the lease. In essence, appellant's position is that the district court applied incorrect principles of law and that appellee is not entitled to summary judgment on the facts in the record.

Appellee contends that, under Indiana law, if a lessor dispossesses or evicts a lessee from *any portion* of the leased premises, the lessee may elect to rescind the lease and abandon his lease obligations. These principles were apparently applied by the district court.

■ The pertinent Indiana law is contained in several three-quarter century old cases, only one of which was cited by the parties. These cases indicate that a lessee who is evicted from a *material part* of the leased premises may elect to abandon the whole premises and terminate his obligation to pay rent. Talbott v. English, 156 Ind. 299, 305–308, 59 N. E. 857 (1901); Hoagland v. New York, Chicago and St. Louis Railway Co., 111

Ind. 443, 446, 12 N.E. 83, 13 N.E. 572 (1887); Avery v. Dougherty, 102 Ind. 443, 447–448, 2 N.E. 123 (1885); Miller v. Michel, 13 Ind.App. 190, 191, 41 N.E. 467 (1895).

■ A transitory and fleeting interference by the lessor with the lessee's possession is not an eviction, but a mere trespass, for which the lessee is entitled to damages. Talbott v. English, supra, 156 Ind. at 307, 59 N.E. 857; Avery v. Dougherty, supra, 102 Ind. at 447, 2 N. E. 123; Miller v. Michel, supra, 13 Ind. App. at 191, 41 N.E. 467.

■ To constitute an eviction the act of the lessor must constitute an expulsion or dispossession of the lessee (actual eviction) or an interference with possession so serious that it deprives the lessee of the beneficial enjoyment of the leased premises (constructive eviction). Talbott v. English, supra, 156 Ind. at 305–306, 307–308, 59 N.E. 857. The acts of the lessor must constitute an assertion of right or title. Talbott v. English, supra, 156 Ind. at 307, 59 N.E. 857; Avery v. Dougherty, supra, 102 Ind. at 447–448, 2 N.E. 123; Miller v. Michel, supra, 13 Ind.App. at 191, 41 N.E. 467.

We have found no Indiana cases, and none has been cited, considering the effect of an eviction on a lessee's obligations other than that to pay rent. The authorities indicate that eviction does not terminate the tenancy:

"An eviction by the landlord does not, it seems, terminate the tenancy. That this is so, would appear from the statements in the books, not that the rent is extinguished by an eviction but that it is suspended thereby, and that it is revived by the tenant's re-entry. That an eviction from part does not terminate the tenancy has been clearly asserted, and it does not, it has been decided, relieve the tenant from the performance of his covenants other than for the payment of rent, such as that to repair, or to use the premises in a tenant-like manner." 1 Tiffany, Real Property, § 146 (2d ed. 1939). See 3 Thompson, Real Property, § 1137 (1959 Repl.); 32 Am.Jur. Land-

lord and Tenant § 245 (1941); 51 C.J.S. Landlord and Tenant §. 97 (1947). See also, 1 American Law of Property § 3.52 (Casner ed. 1952).

We have examined the cases cited by the authorities for the proposition that eviction has no effect except to suspend the obligation to pay rent. These cases concern tenants who remain in possession after partial eviction, and are therefore distinguishable from this case. For this reason, the authorities afford us little guidance.

██ Ordinarily the covenants of a lease are deemed independent in the absence of indications that the parties intended them to be dependent. 3 Thompson, Real Property § 1115 (1959 Repl.); 1 Tiffany, Real Property § 88 (2d ed. 1939). The rule that the lessee's covenant to pay rent is dependent upon the lessor's covenant of quiet enjoyment is an exception borrowed from the law of contracts.

██ A *total* eviction, whether actual or constructive, deprives the lessee of the beneficial enjoyment of the premises. Rent, which is the principal consideration for the use and enjoyment of the leased premises, is suspended only prospectively, until the lessee returns to possession of the premises. Past rent is not recoverable by the lessee. 3 Thompson, Real Property § 1134 (1959 Repl.). The rationale for the rule that partial eviction suspends the obligation to pay rent on the whole premises is that the lessor should not be allowed to apportion his wrong. Ibid.

██ In the instant case, appellee's covenant to remove the vault upon appellant's request was part of the consideration for the demise of the premises. Unlike covenants to pay rent, make repairs or pay taxes, it was entirely an executory covenant, and was designed to remain executory until near the termination of the lease. It imposed a heavy burden on appellee, as reflected in appellant's allegation that the cost of removing the vault was about $26,000. On the basis of these facts, known to the parties at the time they executed the lease, we conclude it fair to infer that the covenant was intended to be dependent on appellant's covenant of quiet enjoyment.

In determining the effect of the encroachment on appellee's obligation to remove the vault, the Indiana courts would, we believe, apply the same test they have applied in determining the effect of a partial eviction on a lessee's rent obligation—the materiality of the encroachment. However, since the covenant to remove the vault was part of the consideration for the *entire lease,* appellant's breach should be measured against the value to appellee of the entire lease.

██ To sustain its motion for summary judgment on the ground that its obligations were discharged by appellant's encroachment and its election to rescind, appellee was required to show the encroachment, *its material effect on the lease* and an abandonment of the premises. The record contains undisputed evidence of the fact of encroachment and the abandonment.

██ Placing the mobile banking unit on part of the leased premises effectively dispossessed appellee of that part of the premises. This constituted an actual eviction from the part occupied by the mobile unit.

Appellee has made no showing that the part of the demised premises from which it was evicted was *a material part* or that the eviction was *a material breach* of the covenant of quiet enjoyment. Beyond the bare showing that there was an encroachment and that the western 5.45 foot strip of the leased premises provided access to appellee's walk-up window, there is no showing from which materiality can be inferred. The record does not contain evidence of the extent to which the mobile banking unit encroached on the 5.45 foot strip.[2]

**2.** This is merely a deficiency in the record, not a disputed issue of fact. The parties appear to agree on the description of the premises in metes and bounds and on the position of the mobile banking unit.

We find no error in the district court's conclusion that the lease authorized appellee to remove the boiler and air conditioner.

Appellant contends the district court erred in denying his motion to compel appellee's president, M. C. Oberhelman, to answer questions that he refused to answer at the taking of his deposition. Several of the questions related to appellee's use and control of the building and the western 5.45 foot strip of the leased premises.[3] These were objected to on the ground of irrelevancy. Appellee's position was that the lease speaks for itself.

Appellant's questions concerning the use and control of the premises were relevant to the question of materiality, and as to those questions appellant's motion should have been granted. His motion was properly overruled as to other questions.

In sum, we have concluded that, as a matter of law, under the lease here for consideration, appellee was authorized to remove the boiler and air conditioner it had installed at its own expense.

However, under the law as we conclude the courts of Indiana would construe it, appellee may not rescind the lease and thereby avoid the covenant to remove the vault at the expiration of the lease, absent a strong showing that the small area of the demised real estate from which it was evicted was a material part thereof and that such eviction constituted a material breach of the covenant of quiet enjoyment, in view of the limited time remaining until the expiration of the lease.

Since we find that under our view of the law appellee has failed to properly support its motion for summary judgment on the question of materiality, we are required to vacate the judgment of the district court and remand the case for hearing on that issue. Thereafter, the court may make such additional findings as it deems appropriate and enter a judgment accordingly, with right of further appeal, if any, to this court.

The judgment of the district court is vacated and the cause remanded for further proceedings not inconsistent with this opinion.

Vacated and remanded.

3. These are questions 88, 92, 93, and 95.