# Frank E. Sweeting, Appellant, v. V. A. Reining, Appellee.

## Gen. No. 7,803.

1. LANDLORD AND TENANT—*breach of landlord's agreement to improve as question of fact.* In an action for rent of a building under a lease in which it was recited that the building was to be used as an automobile showroom and salesroom and by which the landlord agreed to construct suitable runways from an alley to the basement and to the main floor and defendant pleaded that the runways constructed were not suitable for the purposes desired, whether they were suitable was a question of fact which, by a general verdict for defendant, was found in his favor.

2. LANDLORD AND TENANT—*construction of landlord's agreement to make specified improvements.* Where the owner of a building leased it to be used for an automobile and tractor salesroom and workshop and agreed "to construct suitable runways from alley to basement and from alley to main floor," his agreement to construct runways suitable for the purposes for which the building was rented was not limited to such runways as the surroundings, circumstances, the size and character of the building and width of the alley would permit, but such as were suitable for the tenant's business.

3. LANDLORD AND TENANT—*reasonableness of tenant's delay in vacating premises after constructive eviction.* In an action for rent of a building for the month of March where it appeared that defendant completely vacated the building February 29 because suitable runways had not been constructed into the building by plaintiff in accordance with a provision in the lease, defendant cannot be said to have remained in the building an unreasonable time after his constructive eviction where negotiations concerning the runways continued until February 5, when plaintiff finally refused to do anything further to make the runways suitable for the purposes for which the building was rented, at which time the rent for February had been paid.

4. LANDLORD AND TENANT—*construction of lessor's agreements to make specified improvements.* An agreement by the lessor of a building to construct suitable runways from the alley into the basement and main floor cannot be construed to mean such runways only as could be made without altering the structural part of the building.

5. LANDLORD AND TENANT—*intent as element of constructive evic-*

*tion.* Where a lease provided that the lessor should construct "suitable" runways from the alley into the basement and main floors of the building which were to be used as automobile and tractor salesrooms and shop and, because of the lessor's failure to construct runways which were suitable for that purpose, the tenant vacated the building, it was not necessary to constitute the lessor's failure a constructive eviction to show an intentional and wilful purpose on his part to deprive the tenant of the enjoyment of the demised premises.

Appeal by plaintiff from the Circuit Court of McLean county; the Hon. EDWARD A. BARRY, Judge, presiding. Heard in this court at the October term, 1924. Affirmed. Opinion filed December 31, 1924.

SIGMUND LIVINGSTON, for appellant.

WILLIAM R. BACH, for appellee.

MR. JUSTICE CROW delivered the opinion of the court.

The action was for rent on a building for the month of March, 1924, under a written lease between the parties. The lease was for a period of three years commencing October 1, 1923, and ending September 30, 1926. The premises leased were to be used for a showroom for automobiles, tractors, tractor and automobile accessories and workshop. The defendant entered into and occupied them until the last day of February, 1924, when he moved away and surrendered the possession. The pertinent portion of the lease is:

"Party of the second part doth agree that he has fully examined the said building and finds the same in proper and suitable repair and condition. That he will keep the same in a reasonable state of repair except injury caused by fire or other unavoidable accident. Landlord agrees to construct suitable runways from alley to basement and from alley to main floor and cut opening in center partition where directed by tenant."

The general issue and two special pleas were filed. The first sets forth the clause of the contract provid-

ing for suitable runways and avers that the plaintiff did not construct suitable runways and refused to construct them and that the building was rented for the operation of a workshop and salesroom for automobiles and tractors and that the defendant was by said refusal prevented from using and enjoying the said premises and was compelled to move from the said building and did move February 29, 1924, and had not occupied said premises since. The second avers that plaintiff ought not to maintain his action because the defendant was evicted, the premises being rendered useless in part to the defendant for the purpose for which they were rented as a showroom for automobiles and tractors and tractor and automobile accessories, because the plaintiff refused to construct a runway from the alley adjoining the premises to main floor of said premises as plaintiff had contracted to do, and that thereby defendant was prevented from using the main floor and workshop, and was compelled to move therefrom. To the first plea plaintiff replied that he had constructed runways from the alley to the basement and from the alley to the main floor and cut an opening in the center partition as directed by the tenant. Issues being joined the cause was tried by a jury which found for defendant. On the verdict judgment *nil capiat* and for costs was rendered, to reverse which this appeal is prosecuted. The errors assigned are, receiving evidence for defendant; refusing to receive evidence for plaintiff; refusing proper instructions for plaintiff; giving improper instructions for defendant; modifying instructions offered by plaintiff; overruling motion for peremptory instruction at the close of defendant's case and at the close of the whole case; overruling motion for new trial and rendering judgment on the verdict.

Plaintiff made a prima facie case by putting in evidence the written contract and testified defendant had not paid the rent for the month of March. The de-

fendant to support his pleas produced four witnesses, including himself. Plaintiff in rebuttal produced a like number. All this evidence was directed to the condition of the runways to the main floor and the basement. All evidence given for defendant tended to prove that the runways from the alley to the basement and main floor were not suitable for use in handling automobiles and tractors and getting them into the building. That on the part of plaintiff tended to show they were suitable, although the replication does not aver they were suitable. It is not necessary to examine it minutely. It is sufficient that the state of the evidence is such that, in the absence of error in its reception or in the giving and refusal of instructions, it authorized the verdict returned.

In arriving at the meaning of a contract it must be viewed to the light afforded by the language employed by the parties to it and their purpose in employing the language. What did they say? What was their purpose in saying it? The terms of the contract are unambiguous. Stripped of verbiage they say lessor lets to the lessee a certain building to be used for a showroom for automobiles, tractors, automobile accessories and workshop. Their purpose in employing the portion of the contract pleaded in bar was to render the leased premises available for the use of the tenant by requiring the construction of suitable runways from the alley to the basement and from the alley to the main floor. Whether the runways were suitable was a question of fact, which, by the general verdict returned, was found for the defendant.

Law operates upon persons in their every relation in life. It fixes their rights and obligations. Subject only to the condition that an agreement is not prohibited by law or on the ground of public policy, parties competent may by contract regulate rights and fix obligations. Where they have done so, the contract becomes the law of the parties. It is as bind-

ing as legislative mandates. In this case, when the
plaintiff as part of his contract with defendant agreed
"to construct suitable runways from alley to base-
ment and from alley to main floor" in furtherance of
the only purpose for which defendant was entering
into the contract, he bound himself unconditionally to
do it. The language is the most apt that could be
employed to express his undertaking. Having at-
tached no conditions to his undertaking, courts are not
authorized to interpolate any. These hornbook prin-
ciples were doubtless in the mind of the court when
he sustained numerous objections to questions pro-
pounded to plaintiff's witnesses in rebuttal and struck
from the record testimony given by them, and sus-
tained objections to offers by counsel of testimony for
plaintiff. A fair illustration of the application of the
principle is found in the ruling on the following ques-
tion and offer: "Q. I will ask you to state further
if, in your opinion, it is possible that a plan could
have been devised for this entrance into the first floor
and the basement considering the structure as it was
and the flooring. Objection sustained. * * * Mr.
Livingston: I offer to prove that the manner in which
the work was done, the entrance and the platform and
the incline constructed, was in the best possible man-
ner it could have been done considering the width of
the alley and the dimensions of the building and the
structure of the building." Many more questions of
like character were asked and offers made. To all,
objections were sustained, and the several rulings are
assigned as error.

Appellant's offer was in harmony with the conten-
tion in his argument that the proper construction of
the lease requires the appellant to construct only such
entrance and runways from the alley into the building
which the surroundings, circumstances, the size, char-
acter of the building and width of the alley would per-
mit. To construe in that manner the language em-

ployed we must insert words not used, nor kindred words. The alley was adjacent to his property. If he was willing only to be bound by conditions known to him, it was his duty to put the limitation in the contract. The courts have no authority to relieve him from the hardships of his contract when he failed to insert terms sufficient to protect himself. 6 Ruling Case Law, p. 997, sec. 364; *Bunn v. Prather,* 21 Ill. 217; *Dekler v. Held,* 50 Ill. 491; *State v. Buck,* 81 Ill. 343; *Summers v. Hubbard,* 153 Ill. 102. The known conditions so apparent to appellant now may have been the inducement for the insertion by appellee of the absolute undertaking in the contract and to which appellant assented. If there were no other sufficient evidence in the record to support the contention of appellee as to the unsuitableness of the runways, the contention now made, that they were as suitable as conditions would permit, is a tacit confession of unsuitableness without the benefit of avoidance of the consequences of the confession.

The principles laid down by the Supreme Court, to which we have referred, guided the court not only in his rulings on the evidence but in the giving of the instructions for defendant and the refusal and modification of those for plaintiff. They are subsumed and applied in the following:

"The court instructs the jury that if you believe from the evidence that the plaintiff failed and refused to construct suitable runways from alley to main floor of the building so that the defendant could reasonably move automobiles in and out of the showroom of said building on the main floor thereof, then in law there was a constructive eviction, and if you believe from the evidence that the defendant moved out of said building before the 1st day of March, then said defendant would not be liable for rent thereafter."

Appellant in his argument insists the instruction is erroneous because it "entirely omits the feature that the plaintiff was only required to build such suitable

runways as the size of the building and the width of the alley would permit.'' Upon the most elementary principles of the law of contracts, this objection is not valid. There are no such conditions in the contract as counsel would have us insert. Appellant knew the size of the building, the width of his alley and every condition tending to make a compliance with his undertaking inconvenient, difficult and perhaps expensive, yet he entered into it unconditionally and the court will not relieve him from any of the consequences. It is further urged that, according to this instruction, it made no difference as to the width of the alley, or that the runways were constructed in the most approved and workmanlike manner, under the best approved plan devisable by human ingenuity, yet, if the automobiles could not reasonably be moved, it was a constructive eviction. Again, the elementary doctrines are a sufficient reply to the objection. It is further said, unless the failure of appellant was wilful and intentional, to deprive the tenant of the use of the premises, ''there was no constructive eviction, and therefore the instruction is not a true statement of the law and clearly erroneous.'' Counsel in this ''overlooks or misapprehends'' the situation. The failure of appellant to comply with the terms of the briefly expressed stipulation vital to the contract was a wilful failure. There was no insuperable impediment to its execution. The evidence shows he knew the inefficiency of the runways and of their utter lack of adaptability to the purpose for which the premises were leased. Knowing that fact, he rejected the offer of appellee after long negotiations to share the expense of making suitable runways. Appellee was under no obligation to do so and the fact appellant refused to meet him on any terms that would render the premises tenantable shows an unwillingness to comply with his undertaking, if not a desire to be rid of the tenant. His conduct was a wilful refusal to discharge a duty voluntarily assumed.

Another objection to the instruction is, it takes away from the jury entirely the question whether defendant remained in the building beyond a reasonable time after the constructive eviction, but on the contrary states to the jury that if he moved out of said building before the first of March he was not liable for rent. The suit was for rent for the month of March. Defendant completely moved out of the premises February 29. It is contended that on February 5, Sweeting positively told Reining he would spend no more money and do nothing further in fixing the runways, and, notwithstanding that, Reining remained. The insistence apparently is, he remained in the premises an unreasonable time. The evidence shows he went into the premises October 2, 1923. Nothing had then been done toward the construction of the runways. Their construction did not begin until some time after. When they were finished by a contractor under the direction of an architect without written plans they proved to be unsuitable. Cars could not be driven over them into the building without being marred. The approach to them through an alley was so narrow much time was necessarily consumed in getting cars on to them so that they could be driven through the door into the building. Complaint was made to the appellant and efforts made to have him remedy what the evidence shows was a patent defect rendering them unsuitable for appellee's business. The conduct and conversations of appellant lent hope of success of the negotiations. These negotiations were pending until February 5, when appellee, after pointing out the unsuitableness of the runways asked appellant, "What further are you going to do for me?" His reply was, "I am not going to do anything." To this the reply was, "then I will move." Appellant then said: "You will have to move and I will not spend anything on that." Appellant afterward saw appellee and asked him what

he had decided about keeping the building and was told "I am not going to keep it." The résumé of the facts shows that the premises were vacated at the expiration of the month for which the rent had been paid under the terms of the lease and before the rent for the month of March, for which the suit was brought, had accrued. The tenant knew the landlord had not complied with the terms of his undertaking. Negotiations were carried on, as the tenant evidently hoped, looking to the compliance with those terms. After the month had begun, on a demand for an assurance of the landlord's intention he was emphatically told nothing further would be done and in reply he as emphatically notified his landlord he would move. He did move. The evidence strongly tends to establish all conditions constituting a constructive eviction as laid down by the authorities we may rely upon. The second ground for exception to the instruction is therefore unsound, as applied to the construction of the contract and the legal result of that construction.

The contention of appellant that it was not the intention of either party that the structural part of the building should be changed, but it was the intention to use the building as it was, and merely cut an entrance in the wall adjacent to the alley and build a runway to the first floor and basement, finds no support in the evidence. This is said in criticism of the refusal of an instruction asked by plaintiff. But, having in mind the undertaking—the covenant of plaintiff—to make a "suitable runway," the court refused to instruct the jury that "under his agreement plaintiff was not required to remodel the structural part of the building * * * or to remove the steel pillars in the interior, but that all plaintiff was required to do was to make a suitable entrance from the alley into the building, with runways to the basement and first floor as convenient as the structural part of the building would reasonably permit." The specific

intention or necessity to make such changes may not have been actually present in the mind of either, but the expressed, unqualified intention to make a suitable runway was in the minds of both. The language employed demonstrates it. The end granted, the means are required, regardless of inconvenience or cost.

We deem it unnecessary to further specifically examine the reasons assigned by appellant as to the alleged errors of the court in his rulings on the evidence and the instructions. We are of the opinion the operative principles of the law relating to the contract itself, as well as to the question of resulting constructive eviction, are implicit in all the rulings as they are explicit in the law governing those questions. The former we have examined and applied to the contract.

Do the facts, with the applicable principles of law, constitute a constructive eviction? The contention of counsel for appellant as stated in his brief is: "A constructive eviction must be wilful and intentional on the part of the landlord with the purpose of depriving the tenant of the enjoyment of the demised premises." *Barrett v. Boddie,* 158 Ill. 479, is cited in support. It is distinguished in *Gibbons v. Hoefeld,* hereafter examined. In *Risser v. O'Connell,* 172 Ill. App. 64, it was contended there was an eviction because the supply of water in the apartment leased by plaintiff to defendant was insufficient and that the tenant having removed from the premises was not liable for three months' rent. The court held that while there was evidence tending to show an insufficient water supply, it did not show plaintiff was in any manner responsible for it. There was only an intermittent supply. Of course, if plaintiff was not responsible for it, there could be no constructive eviction. In *Morgan v. Cook,* 213 Ill. App. 172, the tenant was in possession of leased premises, the landlord to furnish coal for use of the tenant for manufacturing pur-

poses. Large quantities of coal were required. In the severe winter of 1918, the United States Fuel Administration was in control of all supplies as a war measure and issued an order restricting the distribution of coal, over which, as all know, the landlord had no control. In an action for rent, the breach of the covenant to furnish fuel, rendering the plant useless, was invoked as a defense as constituting an eviction. The court held the overruling law of the land prevented the coal supply. Being beyond the control of the landlord, the failure to furnish it was not imputable to him. These cases, with an English case and three cases in New Jersey, are the only cases cited on the subject in the brief of appellant.

Appellee cites and relies upon the last decision of the Supreme Court on the subject of constructive eviction, found in *Gibbons v. Hoefeld*, 299 Ill. 455. Previous to that case there had been expressions of the Supreme and Appellate Courts of this State suggesting, rather than holding, because not necessary to decision, that the rule is, to constitute a constructive eviction, the acts or omissions of the landlord relied on to establish the eviction must have been such as to indicate an intention on his part that the tenant should no longer continue to hold and enjoy the demised premises. The rule is stated in 36 Corpus Juris, p. 263, sec. 989. It is there followed by a statement of the common-sense rule as follows: "However, it is not necessary that there should be an express intention of the landlord to compel the tenant to leave the demised premises or to deprive him of the beneficial enjoyment thereof. A man is presumed to intend the natural and probable consequences of his acts; and, therefore, acts or omissions of the landlord which are calculated to, and do, make it necessary for the tenant to move from the demised premises constitute a constructive eviction," *Gibbons v. Hoefeld*, with many cases from other States, is cited in support of the text.

In the *Gibbons* case, the premises were leased for the purpose of a haberdashery and retail clothing business. A provision was contained in the lease that the lessor should not be liable for damage caused by water. It also contained a stipulation: "That no representations, except such as are indorsed hereon, have been made to the lessee respecting the condition of said premises. The taking possession of said premises by the lessee shall be conclusive evidence as against the lessee that said premises were in good and satisfactory condition when possession of the same was so taken."

By another clause of the contract it was stipulated the lessor should not be liable for damage to person or property sustained by the lessee or by any other persons, due to the building becoming out of repair or due to certain other causes specified, followed by a clause containing the specific stipulation: "This provision shall apply especially (but not exclusively) to damage caused by water, * * * and shall apply equally whether such damage be caused by the act or neglect of other tenants, occupants or janitors of said building or of any other persons, and whether such damage be caused or occasioned by any thing or circumstance above mentioned or referred to or by any other thing or circumstance, whether of a like nature or of a wholly different nature."

Water having come into the building after repeated efforts by the landlord to prevent it by the employment of competent architects and workmen, the tenant abandoned the premises and the suit for the quarterly rent of $4,000 followed. The defendant in bar of the action pleaded the facts as an eviction. At the trial the court directed a verdict for plaintiff, and an appeal was prosecuted to the Appellate Court. That court affirmed the judgment of the circuit court, the opinion being reported in 216 Ill. App. 282. The dominant idea of the Appellate Court as to the law

on the point now under consideration is clearly indicated in the concluding paragraph of the opinion: ''In our opinion the evidence in this record as to the landlord's actions involved no ambiguity. Not only is there no evidence showing or tending to show any wrongful act or omission of duty on the part of the landlord showing any intention on his part that the tenant's possession or enjoyment of the premises should be interfered with, but such evidence as there is on this point is to the contrary.'' The opinion cites cases containing expressions to the effect that to constitute a constructive eviction, the omission of duty on the part of the landlord or the wrongful act committed by him must be something of a grave and permanent character evincing an intention on his part that the tenant shall be deprived of the demised premises.

These references to the case in the Appellate Court are made to emphasize the value of the decision of the Supreme Court on the important legal question now under consideration. Not only are the premises of the argument of plaintiff in error here denied, but the conclusions as well. As to the duty, the court say: ''It was the legal duty of defendant in error, in the first instance, to make the premises tenantable for the use for which they were leased and plaintiff in error was not bound to accept them if that duty had not been performed. If defendant in error had put the premises in tenantable condition in the first place, no duty was imposed on him to repair during the term of the lease.'' The contract was consummated in December, 1912, as stated in the report of the case in the Appellate Court. About March 1, 1913, when the tenant was to have possession, it was observed there was some seepage in the basement of the leased premises and the tenant refused to take possession until the condition was remedied. Being notified by the landlord that it would be done, the tenant agreed that,

when done, he would take possession. Repairs were made and the tenant took possession. Afterward, during a severe rain the basement was flooded and the tenant moved out. There was no covenant to make the premises suitable as in this case. With these facts in view the Supreme Court laid down the above rule as to the duty. Further on in the opinion, the court say: ''Under the facts of this case as to the circumstances under which possession was taken, the terms of the lease cannot be applied the same as if plaintiff in error had accepted possession without the promise and representations referred to.  *  *  * From this record it appears he did not regard the premises tenantable March 1, and defendant in error did not claim they were.'' All this was said as applicable to a situation where there was no express covenant to make the premises suitable for the purpose for which they were let. All the more are the statements of duty apt in this case where the undertaking of the landlord is expressed and unconditioned.

It will be noted in considering the *Gibbons* case, that it was contended (page 462) as in this case, that when complaint was made of the condition rendering the premises untenantable the landlord was guilty of no negligence in attempting to remedy the conditions, that he endeavored to make the necessary repairs. That contention was nullified by quotation from the *Keeting* case, one of the cases there ''much relied on'' where it is said: ''In order to constitute an eviction it is not necessary that there should be an actual physical expulsion. Acts of a grave and permanent character, which amount to a clear indication of an intention on the landlord's part to deprive the tenant of the enjoyment of the premises, will constitute an eviction.  *  *  *  To evict a tenant, according to the original signification of the word, is to deprive him of the possession of the land. But the landlord, without being guilty of an actual physical disturbance of the

tenant's possession, may yet do such acts as will justify or warrant the tenant in leaving the premises. He may abandon the premises in consequence of such acts or he may continue to occupy them. If he abandons them, then the circumstances which justify such an abandonment, taken in connection with the act of abandonment itself, will support a plea of eviction as against an action for rent." Distinguishing and applying the *Barrett* case, relied on here by defendant in error, the court concluding, say: "Further commenting on what is necessary to constitute an eviction, the court said: 'It must be by a wilful omission of duty or a commission of a wrongful act. Where there is no duty not complied with and no wrongful act committed by the landlord toward the tenant no eviction occurs.' "

Concluding the discussion of the principles involved, the court say it was a question for the jury whether the failure of the defendant in error to remedy the condition was sufficient to constitute a constructive eviction and the court should not have directed a verdict. The portion of the opinion restating and clarifying the circumstances warranting the conclusions of eviction, the tenant having abandoned the premises, are so pertinent to the conclusion reached by us that we think it proper to include it in connection with the facts in this case and the principles of contract we have sought to enforce, at the hazard of undue extension of this opinion.

The court say: "The failure of the defendant in error to make the walls water tight was a wrongful omission of duty he owed to his tenant, and the proof tends to show that by reason of the failure to perform that duty the basement was flooded at different times and the premises rendered untenantable. We do not understand the law to be that an omission of duty by the landlord which has the effect of depriving the tenant of the enjoyment of the demised premises must

be shown to have been with the intent that such should be the effect of the omission. Whether the landlord intended that result could not, it seems, in reason be a determining factor if he wilfully refused to fulfill his promise or so negligently performed it that what he did was of no benefit in protecting plaintiff in error in the enjoyment of the demised premises."

The many rulings of the circuit judge on the reception of evidence and on the instructions being in consonance with the principles of law applicable to the facts at issue the judgment is affirmed.

*Affirmed.*