WILLIAM H. BARRETT *et al.*

*v.*

NICHOLAS V. BODDIE.

*Filed at Ottawa October 11, 1895.*

| 158 | 479 |
| 158 | 648 |
| 158 | 479 |
| 167 | 100 |
| 158 | 479 |
| 77a | 154 |
| 158 | 479 |
| 107a | 2350 |
| 158 | 479 |
| 111a | 5314 |
| 158 | 479 |
| 213 | 4541 |

1. CONTRACTS—*existing law is part of contract.* The law as it exists at the time when a contract is made becomes a part of it.

2. LANDLORD AND TENANT—*eviction of tenant by landlord—general rule stated.* An eviction is something done by the landlord of a grave and permanent character, for the purpose and with the intention of depriving the tenant of the enjoyment of the premises.

3. SAME—*effect of retention of possession after alleged eviction—waiver.* Possession retained by the tenant after an alleged constructive eviction is a waiver of the right of abandonment.

4. SAME—*liability for rents where possession is retained.* After constructive eviction, liability for rent exists, according to the terms of the lease, so long as occupancy is retained under it.

5. SAME—*obstruction to chimney does not relieve from payment of rent.* The obstruction of a chimney in a four-story building at a point above a room on the first floor leased for a restaurant and saloon, causing such chimney to smoke, so that the tenant is unable to prosecute his business, does not relieve him from liability to pay rent, where he has covenanted to keep and deliver up the premises in good repair, with a provision that the landlord shall not be liable for failure to keep them in repair.

*Barrett* v. *Boddie,* 57 Ill. App. 226, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

On December 19, 1892, the lease in question was executed between Nicholas V. Boddie, appellee, by Boddie Bros., his agents, and Nic. Raquet, the rental of which was guaranteed by appellants, Barrett & Barrett, the premises leased being the first or main floor of the building known as No. 46 Lake street, Chicago. The lessee, Raquet, used the said premises for the purposes of a restaurant and saloon, the rental provided amounting to $250 per month. The building was a four-story and base-

ment building, and the chimney furnishing flues to the first floor rented to Raquet under the lease in question, extended up through the other floors to the top of the building. The lessee took possession about December 19, 1892, and entered upon the business of keeping a restaurant and saloon, and so continued until some time in the month of April, 1893, when suddenly the chimneys became no longer of use for the purpose of carrying away the smoke and for the operation of his ranges, etc., so that he was unable to prosecute his business. He thereupon had an examination made, which showed that the obstruction was to that portion of the chimney above the first floor and beyond the premises rented under the lease in question, and consisted of brick and other materials, entirely filling the flue. Prior to this time the evidence shows that the agents of the lessor had stated to the lessee that they could obtain a much larger rental for the premises than he was paying. When the obstruction to the chimney occurred, about the first of April, 1893, the attention of the agents, the only representatives of the lessor in Chicago, was called to the condition of the chimney, and the statement made to them that either the chimney must be fixed or the lessee would have to abandon the premises,—that he could not conduct his business therein. They promised to fix it, but failed to keep their promise, and when the tenant, becoming anxious, sent a man to them for the purpose of having him remove the obstructions, they declined to do it. The lessee remained in possession of the premises, unable to do any business, from about the first of April until in June, 1893, when he abandoned the premises and delivered the keys to the agent of whom he rented the premises.

It is urged there is a conflict in the evidence as to the time to which the rent was paid—as to the amount of rent due. By the terms of the lease the lessee acknowledged he had received the premises in good order and repair, and that no representation as to condition or re-

pair had been made by the lessor except as contained in the lease. By another condition it was provided the lessor should not be liable for any damages occasioned by failure to keep said premises in repair, etc., nor for damages arising from the act or neglect of co-tenants or other occupants of the same building, or of owners or occupants of adjacent or contiguous property. The lessee further covenanted to keep the premises in repair. The evidence on behalf of defendants as to the desire of the lessor to get rid of the lease was offered as tending to show the object upon his part, and those representing him, in having the chimney in such a condition that the premises were no longer of any use to the tenant, in order that he might be forced to leave the premises.

On the trial the defendants offered to show an eviction of the tenant, Raquet, from the demised premises by the landlord's agents, but the court refused to allow the defendants to introduce evidence showing, or tending to show, an eviction, unless they should first prove that such agents were expressly authorized and directed by the landlord to cause an eviction of the tenant. The language of the trial court in passing upon this point was: "If the landlord came there and he actually interfered, proof of that kind might be admissible, but I do not see how you are going to get anything in less than that. You would have to bring this home to the landlord, who don't live here, and you would have to show that they had authority to do what they did, I think, to make it of account. A man might have authority to make a lease and collect rents, but no authority to dispossess a tenant unless you brought it home to the landlord. If you promise that you can show that he (the landlord) personally interfered, or that he had authorized anybody to interfere, with the tenant's possession, I will give some thought to that. Do you contend that without showing any knowledge or sanction of the landlord, or any act dispossessing this tenant, that that would be proper?"

158—31

The court instructed the jury to find for the plaintiff, and directed the amount of such finding, excluding the question of a constructive eviction, and the jury found according to the instruction of the court. A new trial was denied, judgment entered on the verdict, and the defendants appealed to the Appellate Court for the First District. There the judgment of the circuit court was affirmed, and defendants appealed to this court.

On behalf of appellants it is claimed: First, that the trial court erred in refusing to allow the defendants to introduce evidence showing, or tending to show, an eviction of the tenant by the landlord's agents; that the question as to whether the agents were authorized to do the acts complained of should have been left to the jury; that it was not necessary that the agents should have had express authority in order to bind their principal. And second, the trial court erred in instructing the jury to find for the plaintiff.

HOLLETT & TINSMAN, for appellants:

The tenant had no control over that part of the chimney where the obstruction existed; he had no right to go there for the purpose of repairing the chimney. Being unable to continue business, owing to the condition of the chimney, he abandoned the premises. This was an obstruction to the beneficial enjoyment—a diminution of the consideration of the contract—by the failure to act of the landlord, and discharges the tenant from further payment of rent. *Lawrence* v. *Burrell*, 17 Abb. N. C. 312; *Alger* v. *Kennedy*, 49 Vt. 109; *Halligan* v. *Wade*, 21 Ill. 470; *Cohen* v. *Dupont*, 1 Sandf. 312; *Leadbeater* v. *Roth*, 25 Ill. 287.

WOOLFOLK & BROWNING, for appellee:

To constitute an eviction there must be some act of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the premises. *Keating* v. *Springer*, 146 Ill. 482; *Morris* v. *Tillson*, 81 id. 607; 1 Taylor on Landlord and Tenant, secs.

381, 382, 388; *Press Ass.* v. *Brooks,* 30 Ill. App. 115; *Patterson* v. *Graham,* 40 id. 400; *Grommes* v. *Trust Co.* 147 Ill. 634; *DeWitt* v. *Pierson,* 112 Mass. 10.

The landlord is not bound to repair unless he covenants to do so in his lease, and a tenant cannot release himself from his obligation to pay rent by vacating. *Blake* v. *Ranaus,* 25 Ill. App. 486; *McCaull* v. *Herzberg,* 33 id. 542; 1 Taylor on Landlord and Tenant, (8th ed.) secs. 327-330; 1 Washburn on Real Prop. (5th ed.) 576; Wood on Landlord and Tenant, 814, sec. 482, notes.

A verbal agreement or promise on the part of the landlord to make repairs on premises which the lessee holds under a covenant on his own part to keep in repair, cannot be enforced. *Hartford, etc. Co.* v. *Mayor,* 78 N. Y. 1; *Eblin* v. *Miller,* 78 Ky. 371; *Rose* v. *Vetter,* 2 E. D. Smith, 248; *Flynn* v. *Hatton,* 4 Daly, 552.

When a tenant takes under a lease reciting that the premises are in good condition, and knowing that the upper portion of the building will be occupied by other tenants, he will be held to take subject to the risks incident to such occupation, and the landlord is not liable for injuries to one tenant from the acts of another. *Green* v. *Hague,* 10 Ill. App. 598; *Mendel* v. *Frink,* 8 id. 378; Shearman & Redfield on Negligence, sec. 501, notes; *DeWitt* v. *Pierson,* 112 Mass. 8; *Ogilvie* v. *Hull,* 5 Hill, 54; *Gilhooley* v. *Washington,* 4 N. Y. 217.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The term "eviction" is applied to every class of expulsion or amotion. The term is not applicable to a mere trespass on the tenant's possession by the landlord, but to constitute eviction there must be something of a grave and permanent character done by the landlord, for the purpose and with the intention of depriving the tenant of the enjoyment of the demised premises. The question is therefore one of fact, dependent on the circumstances

of the particular case, and to be determined by the jury. *Hayner* v. *Smith*, 63 Ill. 430; *Lynch* v. *Baldwin*, 69 id. 210; *Morris* v. *Tillson*, 81 id. 607.

At common law, in the absence of a provision to that effect in the lease, the destruction of the building from any cause does not discharge the tenant from his liability to pay rent for the full term. (*Smith* v. *McLean*, 123 Ill. 210.) The landlord owes no duty and is under no obligation to repair in a case where he has expressly covenanted with the tenant he shall not be liable to make repairs. *Moffatt* v. *Smith*, 4 N. Y. 126; *Mumford* v. *Brown*, 6 Cow. 475; *Corey* v. *Mann*, 6 Duer, 679; *Ely* v. *Ely*, 80 Ill. 532; Wood on Landlord and Tenant, 814.

The contract of the parties is the measure of their duties and liabilities. The contract is made with reference to the law as it exists, and the law thus becomes a part of the contract. Unless the premises are rendered useless to the tenant by the positive act of the landlord, or unless the tenant has been deprived, in whole or in part, of the possession or enjoyment of his demised premises, actually or constructively, by the landlord, no defense exists to a right to recover rents because of eviction, as none exists, in law or fact. *Keating* v. *Springer*, 146 Ill. 481.

The eviction sought to be shown by appellant was constructive. The possession of the premises was retained by the tenant after the alleged acts of eviction. Possession retained after an alleged constructive eviction is a waiver of the right of abandonment. No constructive eviction exists without a surrender of possession. With retention of possession after constructive eviction, liability for rent exists, according to the terms of the lease, during occupancy thereunder. *Warren* v. *Wagner*, 75 Ala. 188; *DeWitt* v. *Pierson*, 112 Mass. 8; *Scott* v. *Simons*, 54 N. H. 426; *Boreel* v. *Lawton*, 90 N. Y. 293; *Keating* v. *Springer*, *supra.*

By the terms of the lease the tenant accepted the premises as in good repair, and covenanted to deliver up the same in repair, etc. He also accepted a covenant that the landlord should not be liable for failure to keep the premises in repair, nor for damages arising from the act or neglect of co-tenants or occupants of the same building, nor of owners or occupants of adjacent or contiguous property. He further covenanted that he would keep the premises in repair, etc. Such being his contract which is the subject matter of construction, his proposed proof was of no act on the part of the landlord or his agents at the time of the letting, nor subsequently, except a failure to repair. No positive act was proposed to be proven on the part of the landlord or his agents duly authorized. Eviction necessarily being the result of an intended, willful, wrongful act, it must be by a willful omission of duty or a commission of a wrongful act. Where there is no duty not complied with, and no wrongful act committed by the landlord towards the tenant, no eviction occurs. It was not proposed to prove any positive act by the landlord, nor an omission of duty according to the terms of his contract, in person or by authorized agents. An offer to prove matter as a basis of surmise or suspicion is not evidence. Under the lease in evidence the offered proof was not matter of defense. It was not error to exclude the same.

The terms of the contract of leasing in this case are of that character it is not necessary to enter upon the discussion of the question as to whether a different rule exists in relation to the leasing of an entire building or only apartments therein. However the rule may be on that question, there is nothing in this record which presents it for consideration at this time. The examination of the evidence in this record discloses there is no conflict as to the time to which rent had been paid. Appellee's agents testified rent was paid to April 15, and the amount due November 15 was $1625. The tenant testifies no rent

was paid after April 15. The lease, by its terms, shows the rent due, according to the tenant's testimony, is $1625. In this condition of the evidence it was not error to instruct the jury to find a particular amount for the plaintiff.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*