## F. W. Morgan, Appellee, v. George W. Cook, trading as E. C. Cook & Brother, Appellant.

### Gen. No. 24,540.

1. LANDLORD AND TENANT, § 262*—*what does not constitute constructive eviction.* A constructive eviction must be something of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises, and hence an eviction cannot be claimed where it is clearly proved that the landlord employed extraordinary and unusual efforts to prevent the conditions claimed to constitute an eviction.

2. CONTRACTS, § 303*—*when promisor discharged from performance.* The performance of a contract is excused where there is subsequent inability of performance by some act of or under the authority of the government, in which case the promisor is discharged.

3. LANDLORD AND TENANT, § 264*—*when failure to furnish power not constructive eviction.* A constructive eviction by a landlord cannot be predicated upon failure to furnish power in accordance with the requirements of the lease, where such failure was due to the landlord's inability to obtain fuel, due to extraordinary snowfall, preventing delivery and the orders of the United States Fuel Administrator regulating distribution of coal.

Appeal from the Municipal Court of Chicago; the Hon. JOHN COURTNEY, Judge, presiding. Heard in this court at the October term, 1918. Affirmed. Opinion filed January 27, 1919. Rehearing denied February 10, 1919.

TRAINOR & TRAINOR, for appellant.

WILLIAM A. JENNINGS, for appellee.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Plaintiff brought two suits against the defendant for rent and for power furnished the defendant under the covenants of a written lease. Upon trial the court

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

found in the first case there was due from the defendant $257.22, and in the second case $152, and pursuant to a stipulation consolidating the cases a judgment was entered against defendant for $409.22, from which defendant appeals.

Defendant had leased and was occupying the premises for manufacturing. The plaintiff was under covenant in the lease to furnish power, although it was provided that "the lessor is not liable for damages on account of his inability to furnish  *  *  *  power providing his inability to do so is caused by strikes, breakdowns or other causes beyond the control of the lessor." Defendant asserts that the failure of the plaintiff to furnish power upon a certain occasion hereafter described amounted to a constructive eviction which gave the defendant the right to remove from the premises and released him from rental for the balance of the term.

Did the acts of the plaintiff amount to a constructive eviction? Plaintiff is the owner of a large building on May street in Chicago, rented to a number of tenants to whom are furnished heat and electric power generated upon the premises by the use of coal. At the time the lease was made, plaintiff had coal bins in the building capable of storing 125 to 150 tons of coal; the insurance underwriters would not permit the storage of more than 150 tons at a time. The daily consumption of coal was from 12 to 20 tons, and plaintiff had a contract with Rend & Company, operating a coal yard not far from the building, to keep plaintiff supplied at all times. This had been the capacity of the building for storing coal for more than 12 years prior to the occurrence in question.

It was shown by proof that on January 6, 1918, and again on January 12th, there was an unprecedented and extraordinary fall of snow in Chicago and the surrounding country. There was abundant evidence that in the experience of residents of Chicago for a long period of time no such heavy snowfall had ever

before been experienced here. The snow was 8 feet deep in the rear of plaintiff's building where the coal was brought in. By reason of this heavy snowfall the railroads could not move coal, which caused a serious shortage, and thereupon the Cook County Committee of the United States Fuel Administration, under the authority of the act providing "for the national security and defense," approved August 10, 1917, took charge of the switching of coal by railroads in the Chicago district, and issued an order on January 12th that in view of the emergency the roads should disregard their usual methods of switching coal, and deliver the same to the nearest terminal yards. This prevented the switching of coal cars to coal yards, and by reason of this order Rend & Company had no coal shipped into its yard and was unable to supply plaintiff under their contract, with the result that on January 15th plaintiff's coal supply was exhausted and he discontinued furnishing power to the defendant, informing him that power would be resumed just as soon as coal could be obtained. It is also in evidence that on January 17th the United States Fuel Administrator, Harry A. Garfield, issued an order restricting and limiting the use of coal throughout the United States, and prescribing what was generally known as the five fuelless days, beginning at midnight on January 18th and ending at midnight on the 23rd, during which time fuel could not be used except for certain purposes, not including general manufacturing. It is shown, however, that certain persons manufacturing articles pursuant to war orders were given special permits upon application; that some of the tenants in plaintiff's building applied for and obtained such permits, but that defendant, although engaged in manufacturing army blankets under war orders, made no attempt to obtain such special permit. There was evidence tending to show that from the date of the order of January 12th diverting the switching of coal from the yards, Rend & Company had no coal of the kind

used by plaintiff, and that no other coal companies in Chicago had any; that on or about January 16th it was impossible to deliver coal because of the heavy snow. It is also shown that the agent for plaintiff's building was very diligent in the attempt to obtain coal, calling up practically every coal dealer in Chicago and offering to pay any price for the same; that he ordered from Wright Bros., who claimed to have coal, two loads, which they failed to deliver, and that he could not get a pound of coal at any price. This witness also testified that the snowstorms of January 6th and 12th were the biggest in the history of Chicago and that no such conditions were ever known here before. The witness related in detail his efforts to secure coal, which proved beyond question that he did everything humanly possible to obtain coal but without success. It was shown that on January 17th plaintiff was able to furnish some power, and on the 19th furnished and delivered power at full capacity. There was also evidence tending to show that prior to the storm plaintiff had an ample supply of coal in his bins to meet reasonable expectations.

In *Hayner v. Smith,* 63 Ill. 430, the court approved of the rule that a constructive eviction must be "something of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises." This is reasserted in *Keating v. Springer,* 146 Ill. 481; *Barrett v. Boddie,* 158 Ill. 479, and *Rubens v. Hill,* 213 Ill. 523. Applying this rule to the circumstances of this case, it cannot reasonably be claimed that any conduct of the landlord indicated any intention to deprive defendant of such enjoyment; on the contrary, not only the absence of such intention is demonstrated but it is clearly proven that extraordinary and unusual efforts were employed to prevent the failure of the supply of power. It may be true that in the absence of any other evidence the mere doing of the wrongful act of the landlord is sufficient to show intention (*Wade v.*

*Herndl,* 127 Wis. 544), but this rule is not applicable to the present facts.

It is contended that the obligation to furnish power was an absolute guaranty which cannot admit of failure from any cause whatever. This is not the law. The rule is that the performance of a contract is excused where there is a subsequent inability of performance by some action or under the authority of the government; in such cases the promisor is discharged. Cyc. vol. 9, p. 630, and cases there cited. See also a recent statement in *Hite v. Cincinnati, I. & W. R. Co.,* 284 Ill. 297, where the court said:

"This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals."

The actions of the United States Fuel Administration of January 12th and 17th, in taking control of coal deliveries in the Chicago district, were the exercise of the paramount power of the government, operating as a war measure in the particular emergency occasioned by the extraordinary storm. (Federal Act "For The National Security And Defense," approved August 10, 1917.) In so far as this rendered impossible the performance of plaintiff's obligation with respect to power, he was discharged from performance.

There is some evidence tending to show that the real reason defendant vacated the premises was his desire for larger space. He had made inquiries for additional space in December, 1917, and looked at several other properties for this purpose; he began to negotiate for a lease of new premises some days prior to January 15th, which was the date power in plaintiff's building was suspended. It is also shown that the lease of the new quarters was signed on the afternoon of the 15th. There is also evidence that he commenced to move some of his appliances out of plaintiff's build-

ing as early as January 10th, and concluded the moving on February 2nd.

Under the unusual circumstances existing at the time, and considering the conduct of the plaintiff and the orders of the "Fuel Administration," we are of the opinion that there has not been shown any conduct which should be held to amount to a constructive eviction.

There is some objection to the item of $32.22 for electric power, but we are of the opinion that the evidence sufficiently proves this item.

Complaint is made that the trial court included $75 for March rent in its judgment in the first case, which was commenced February 8, 1918. We cannot determine this from the record before us. The total of the items sued for, including March rent, is $370.34, whereas the court allowed $257.22. We must therefore conclude that the court allowed only such items as were proper, and must presume that March was not included. As to the items in the second suit, the statutory record was not filed in this court, and we cannot therefore know as to the items in the statement of claim in that suit. Judgment was entered on May 13, 1918, so that the month of March could properly have been included in the second judgment.

For the reasons above indicated we hold that the judgment of the trial court was right, and it is affirmed.

*Affirmed.*