(No. 19885.—

THE AUTOMOBILE SUPPLY COMPANY, Defendant in Error, *vs.* THE SCENE-IN-ACTION CORPORATION, Plaintiff in Error.

*Opinion filed June 20, 1930.*

ALBERT SABATH, (CHARLES HUDSON, of counsel,) for plaintiff in error.

BURRY, JOHNSTONE, PETERS & DIXON, (JOHN W. KEARNS, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The Automobile Supply Company recovered a judgment by confession against the Scene-in-Action Corporation on a lease for $1750 rent for the last five months of the term ending September 30, 1928, and $20 attorney's fees. The defendant made a motion to vacate the judgment, which was denied, and on appeal the Appellate Court affirmed the judgment. The record has been certified to us as a return to a writ of *certiorari* allowed on the petition of the defendant.

The defense alleged in the motion to vacate was a constructive eviction of the lessee by the breach of the landlord's covenant to furnish steam heat during ordinary business hours of the heating season, the premises having been rented by the defendant for office purposes and for the manufacture, sale and shipping of electrical advertising display signs. The affidavit filed by the defendant in support of its motion to vacate showed that the office was rented for the use of the officers of the defendant, its clerks, stenographers, book-keepers and other employees and the rest of the premises for the manufacture, sale and shipping of electrical display advertising signs by artists, workmen, designers, mechanics, clerks and other employees of the defendant; that it was necessary for the proper conduct of the business that not only the office but the work-rooms should be kept at a comfortable temperature, otherwise the officers, clerks, stenographers, artists, designers and workmen could not do a reasonable amount of work, or work of proper kind or accuracy; that the kind of work, the materials used and the

class of workmen and artists employed all required that the premises be kept at a reasonably comfortable degree of heat, all of which was well known to the plaintiff and its officers and agents at and before the execution and delivery of the lease; that the plaintiff did not furnish heat reasonably adequate to make the premises tenantable for office purposes or for the manufacture, sale and shipment of electrical advertising display signs, but, on the contrary, in November, 1927, during cold days the premises were without heat from two to five hours on several days; that during December, 1927, there were eight cold days when the premises were without heat from two to five hours each day; that one day for six hours the premises were without heat and were cold, uncomfortable and untenantable for the purpose for which they were rented; that complaint was frequently made during this period to the plaintiff and its agents but without effect; that the plaintiff was indifferent, and though often requested did not attempt to remedy the matter or give adequate heat for the purpose for which the premises were rented; that on February 20, 1928, at the opening of the usual business hours, the temperature in the premises was below 50° owing to the negligence of the plaintiff in failing to heat them and the defendant was unable to do business until after ten o'clock on that day, and the defendant gave notice to the plaintiff that owing to the failure to comply with the terms of the lease, it would be terminated and canceled on April 30, 1928, and that the defendant would vacate the premises on that date; that no attempt was made by the plaintiff to better such conditions and on many days during February and March the temperature was below 50° Fahrenheit; that on April 9, 1928, it was below 50° upon the arrival of the employees, and remained so until after 11:30 owing to the negligence of the plaintiff and its employees; that during the months of November, December, February, March and April the defendant had from thirty to thirty-five employees on said

premises who for a considerable time and parts of many days were unable to work because of the frigid temperature, and it was impossible to make the artistic designs, plates, pictures, photographs and displays necessary in and about the manufacture of its signs unless the temperature was above 55° Fahrenheit; that a number of the employees of the defendant were rendered sick and unable to carry on their work by reason of colds caused by the lack of proper heat in the premises and were obliged to go home and abandon their work for days at a time, to the great loss and damage of the defendant, and at other times said employees labored under great handicaps and were unable to produce the amount and character of work which they ordinarily produced when the rooms were comfortably warm, thereby again causing great loss and damage to the defendant and the output of work was much less than it would have been if the premises had been kept adequately heated; that by reason of the premises, and especially the failure on the part of the plaintiff to furnish adequate heat, the defendant was deprived of the beneficial use and enjoyment of the premises leased, was unable to carry on its business, and was obliged to, and did, vacate and abandon the premises, and on April 30, 1928, surrendered them to the plaintiff and delivered the keys to its agent, who accepted them, and since that date and during the period for which the judgment for rent was confessed the defendant did not occupy the premises or any portion of them and has not been and is not a tenant of the plaintiff.

The eviction of a tenant from the possession or enjoyment of the demised premises, or any part thereof, by the landlord releases the tenant from the further payment of rent. Rent is the return made to the lessor by the lessee for his use of the land, and the landlord's claim for rent therefore depends upon the tenant's enjoyment of the land for the term of his contract. It follows that if the tenant is deprived of the premises by any agency of the landlord

the obligation to pay rent ceases, because such obligation has force only from the consideration of the enjoyment of the premises. The eviction which will discharge the liability of the tenant to pay rent is not necessarily an actual physical expulsion from the premises or some part of them, but any act of the landlord which renders the lease unavailing to the tenant or deprives him of the beneficial enjoyment of the premises constitutes a constructive eviction of the tenant, which exonerates him from the terms and conditions of the lease and he may abandon it. Taylor on Landlord and Tenant, secs. 379, 380; *Halligan* v. *Wade*, 21 Ill. 470; *Anderson* v. *Chicago Marine and Fire Ins. Co.* id. 601; *Leadbeater* v. *Roth*, 25 id. 587; *Bentley* v. *Sill*, 35 id. 414; *Wright* v. *Lattin*, 38 id. 293; *Smith* v. *Wise & Co.* 58 id. 141; *Hayner* v. *Smith*, 63 id. 430.

Not every act of a landlord in violation of his covenants or of the tenant's enjoyment of the premises under the lease will amount to a constructive eviction. Some acts of interference may be mere acts of trespass to which the term "eviction" is not applicable. To constitute an eviction there must be something of a grave and permanent character done by the landlord clearly indicating the intention of the landlord to deprive the tenant of the longer beneficial enjoyment of the premises in accordance with the terms of the lease. (*Hayner* v. *Smith, supra; Barrett* v. *Boddie,* 158 Ill. 479; *Keating* v. *Springer,* 146 id. 481; *Leiferman* v. *Osten,* 167 id. 93.) The failure of a landlord to furnish heat for the demised premises in accordance with the terms of his covenant in the lease justifies the tenant in removing from the premises, and if he does so he is discharged from the payment of rent thereafter. (*Giddings* v. *Williams,* 336 Ill. 482.) These facts constitute a constructive eviction. There can be no constructive eviction, however, without the vacating of the premises. Where a tenant fails to surrender possession after the landlord's commission of acts justifying the abandonment of the premises the liability for

rent will continue so long as possession of the premises is continued. (*Chicago Legal News Co.* v. *Browne,* 103 Ill. 317; *Keating* v. *Springer, supra; Barrett* v. *Boddie, supra; Leiferman* v. *Osten, supra.*) Whether the acts of the landlord amount to a constructive eviction is ordinarily a question of fact for the decision of a jury, depending upon the circumstances of the particular case. *Lynch* v. *Baldwin,* 69 Ill. 210; *Patterson* v. *Graham,* 140 id. 531; *Rubens* v. *Hill,* 213 id. 523; *Gibbons* v. *Hoefeld,* 299 id. 455.

The affidavit in support of the motion to vacate the judgment did not show a defense to the claim for rent under the principles stated. Conceding, without deciding, that the affidavit stated with sufficient definiteness and particularity conditions in regard to the furnishing of heat which would have justified the vacating of the premises in December, on February 20 and on April 9, yet the defendant did not vacate them. It complained frequently in November and December. Its complaints were not heeded, and by its continued occupation of the premises it waived its right to terminate the lease for those breaches of the landlord's duty. The waiver, however, did not waive subsequent breaches, and when new breaches occurred in February, the plaintiff in error, in addition to its complaints, notified the defendant in error, not that it elected to determine the lease and vacate the property for the defendant in error's failure to furnish heat in accordance with its covenant, but that for the failure of the defendant in error to comply with the terms of the lease it would be terminated and canceled on April 30, more than two months after the giving of the notice, and that the plaintiff in error would vacate the premises on that date. It further appears that in February and March the temperature was below 50° Fahrenheit on many days, the number not stated nor for what length of time the low temperature continued on any day, but on April 9 the temperature was below 50° upon the arrival of the employees and so continued until 11:30 o'clock.

Where a landlord is guilty of such a breach of his duty to his tenant under the terms of the lease that the tenant would be justified in vacating the premises, he is not obliged to vacate immediately but is entitled to a reasonable time in which to do so. What is such reasonable time is usually a question of fact, though under the circumstances of a particular case it may become a question of law. (*Giddings* v. *Williams, supra.*) If the plaintiff in error on account of the failure of the defendant in error to furnish heat in December, as it had agreed, would then have been entitled to vacate the premises, it does not appear that it did so within a reasonable time, and it must therefore be regarded as having waived the defendant in error's breach of its covenant. Neither does it appear that the plaintiff in error vacated the premises within a reasonable time after February 20. If it had a right on that date to vacate the premises within a reasonable time for the previous breach of the defendant in error it did not have the right to declare a termination of the lease to take effect two months later. And the same thing is true of the breach of April 9. The affidavit shows no cause of complaint subsequent to April 9. The burden of showing a vacation of the premises on account of the landlord's breach of his duty to the tenant under the lease within a reasonable time after such breach is upon the tenant. The affidavit sets out that by reason of the plaintiff's failure to furnish adequate heat the defendant was deprived of the beneficial use and enjoyment of the premises and was obliged to, and did, vacate and abandon them, and on April 30, 1928, surrendered them to the plaintiff and delivered the keys to its agent. The plaintiff in error no doubt stated the defense as strongly as the evidence would show it and the affidavit must be taken most strongly against it. It alleges that the defendant surrendered the premises to the plaintiff on April 30, and we cannot presume that it did so on any earlier day. The leased premises were the sixth floor of a building, and we cannot take judicial notice that

three weeks was a reasonable time to vacate the premises after the last failure mentioned to furnish heat on April 9. The question was one of fact for the jury, and in the absence of an allegation of fact tending to show the reasonableness of the time there was no question to submit to the jury on behalf of the defendant, who had the burden of proof.

It is stated in the affidavit that the defendant vacated and abandoned the premises and on April 30 surrendered them to the plaintiff and delivered the keys to its agent, who accepted them, and the defendant had not since been the plaintiff's tenant. It is argued that these statements show a surrender of the lease by a parol agreement or by an agreement inferable from the conduct of the parties and present a question of fact upon which the defendant had a right to a trial by jury. Upon the motion the facts stated in the affidavit must be taken as true but not its conclusions or deductions. If the facts stated show a legal defense the judgment should be opened and the defendant be allowed to plead and prove it. A lease under seal may be surrendered by a parol agreement. An agreement is essential to such arrangement. The facts alleged are the vacation and abandonment of the premises, their surrender to the plaintiff, the delivery of the keys to its agent and their acceptance by him,—that is, the defendant left the premises and handed the keys to the agent, who took them. The affidavit alleges an abandonment of the premises, but not an abandonment justified by the fault of the landlord, within a reasonable time after the occurrence of such fault, and the acceptance of the keys or entry of the landlord after such abandonment was not an acceptance of the abandonment as a surrender of the premises. *Barrett* v. *Boddie, supra; Humiston, Keeling & Co.* v. *Wheeler,* 175 Ill. 514; *Marshall* v. *Grosse Clothing Co.* 184 id. 421; *West Side Auction Co.* v. *Connecticut Mutual Life Ins. Co.* 186 id. 156.

It is contended that the plaintiff in error, even if it remained in possession, had a right to recoup its damages by reason of the landlord's failure to keep its covenant to furnish heat. The defendant in error has filed by leave of court a certified copy of the plaintiff in error's Appellate Court brief, from which it appears that no contention as to the right of recoupment was made in that court by the plaintiff in error here, who was the appellant there. The points made in that brief and argument by the appellant were, that the failure to furnish heat in accordance with the provisions of the lease constituted a constructive eviction; that the defendant was entitled to have the evidence of eviction submitted to a jury; that in cases begun by confession of judgment in the municipal court the defendant may file his demand for a jury when the judgment is opened up or vacated and an issue is made; that a written lease, though under seal, may be surrendered by parol agreement or by an agreement inferable from the conduct of the parties, and that the officers of a corporation have no implied authority to execute warrants of attorney to confess judgment. The right to recoup damages was not mentioned, and in conclusion it was urged only that a tenant who is not given the heat provided for in a lease may vacate and terminate the lease without liability for further rent, and whether or not he is justified in the vacation of the premises is a question of fact for a jury; that regardless of the reason for vacating and surrendering the lease, the mere fact that it was surrendered and the surrender accepted by the lessor terminates the relation of landlord and tenant and the further liability for rent, and that the question whether the facts and circumstances show an abrogation of the lease is a question of fact to be submitted to a jury. The question of the right to recoup damages not having been presented to the Appellate Court has been waived.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*