J M B PROPERTIES URBAN COMPANY, Plaintiff-Appellant, v. ALFRED L. PAOLUCCI, d/b/a Paolucci Jewelers, Defendant-Appellee and Counterplaintiff and Counterdefendant-Appellee (Carlyle Real Estate Limited Partnership XIV, Counterdefendant and Counterplaintiff-Appellant).

Third District   No. 3—92—0101

Opinion filed November 3, 1992.

564

Katten, Muchin & Zavis, of Chicago (James E. Hanlon, Jr., and Nemia B. Lebrilla, of counsel), for appellants.

Charles E. Lab, of Shorewood, for appellee.

JUSTICE SLATER delivered the opinion of the court:

Plaintiffs, J M B Properties Urban Company (JMB) and Carlyle Real Estate Limited Partnership XIV (Carlyle), sued defendant, Alfred Paolucci, for recovery of unpaid rent and other damages resulting from defendant's breach of a commercial lease. The trial court found that defendant had been constructively evicted, and plaintiffs appeal. Because we find that defendant waived any claim of constructive eviction, we reverse and remand.

Defendant opened a jewelry store in the Louis Joliet Mall in Joliet, Illinois, in 1978. Barretts Audio and Video Store (Barretts) moved in next door to defendant in November of 1984. Defendant and Barretts shared a common wall. In December of 1984, defendant began complaining to then-landlord Homart Development Company about the high level of noise emanating from Barretts. Defendant continued to lodge such complaints periodically until Barretts vacated the mall in February of 1990.

Carlyle purchased the mall in September of 1985 and took an assignment of all outstanding leases from Homart. Carlyle hired JMB to manage the mall, negotiate new leases and collect rent from mall tenants.

In August of 1986, defendant entered into a new six-year lease with Carlyle which required that defendant operate the jewelry store during the entire term of the lease and refrain from operating any similar business within a five-mile radius of the mall. Defendant failed to pay rent for July 1990 and vacated the premises in August 1990, two years prior to the end of the lease. Defendant moved to a new location within a five-mile radius of the mall.

Carlyle and JMB (collectively Carlyle) filed actions against defendant seeking recovery of past-due rent and penalties for violating the lease. Defendant filed a counterclaim seeking declaratory relief, alleging that he had been constructively evicted as a result of Carlyle's failure to control the excessive noise generated by Barretts. Defendant also filed an affirmative defense alleging that Carlyle had failed to mitigate its damages.

A bench trial was held on October 18, November 22, and December 20, 1991. Several witnesses testified on behalf of defendant concerning the noise emanating from Barretts during their five-year tenancy. Defendant and his employees testified that when Barretts' employees conducted demonstrations of their stereo equipment the walls of the jewelry store literally shook, causing pictures to rattle on the jewelry store walls. The vibrations caused merchandise in display cases to move or topple over so that the display cases had to be reset almost daily. Defendant testified that Barretts' employees refused numerous requests to lower the volume. One of defendant's employees testified that the noise was so loud that at one point she resorted to wearing ear plugs at work. Customers occasionally complained of the noise and at times were unwilling to conduct business in the jewelry store because of the nuisance.

At Carlyle's direction, Barretts insulated the common wall in an attempt to soundproof it in 1985, but this failed to alleviate the problem. Evidence was presented to show that defendant lost at least some profits as a result of the noise because he was unable to perform intricate repair work on watches and jewelry. Defendant lodged approximately 500 complaints with the mall management during the course of Barretts' 5½-year tenancy. Despite the defendant's numerous complaints, and despite the fact that each call was responded to by Carlyle, the excessive noise problem continued throughout Barretts' tenancy.

Robert Allen, the mall manager, testified on behalf of Carlyle. He stated that he personally responded to approximately 50 of the 500 complaints lodged by defendant. He stated that he never heard any excessive noise coming from Barretts. He stationed plainclothes security officers in front of Barretts during peak sales periods in 1988. No excessive noise was heard. No other stores ever complained about noise from Barretts. In Allen's opinion, defendant's complaints were unreasonable.

Tommy Cockrel, assistant security director at the mall, testified that he responded to approximately 11 of defendant's complaints each week and never heard any significant noise.

After hearing the evidence and the arguments of counsel, the court held that defendant had been constructively evicted, and awarded back rent to Carlyle only for the two months during which defendant remained in possession of the premises without paying rent. The court also found that Carlyle failed to take reasonable measures to mitigate its damages.

■ On appeal, Carlyle contends that the trial court erred in finding that the noise emanating from Barretts was sufficient to amount to a constructive eviction. A constructive eviction results from a landlord's failure to keep the premises in a tenantable condition. (*R N R Realty, Inc. v. Burlington Coat Factory Warehouse of Cicero, Inc.* (1988), 168 Ill. App. 3d 210, 522 N.E.2d 679.) Untenantability exists when the interference with occupancy is of such a nature that the property cannot be used for the purpose for which it was rented. *RNR Realty*, 168 Ill. App. 3d at 219, 522 N.E.2d at 685.

We need not address the question of whether the noise was sufficient to render the premises untenantable because we find that defendant waived any claim of constructive eviction by remaining on the premises for an unreasonable length of time after the rise of the untenantable condition. Constructive eviction cannot exist where the tenant does not surrender the property. (*First National Bank v. Sousanes* (1981), 96 Ill. App. 3d 1047, 422 N.E.2d 188.) Following a constructive eviction, the tenant is not required to vacate the premises immediately, but is entitled to a reasonable time to do so. (*Dell'Armi Builders, Inc. v. Johnston* (1988), 172 Ill. App. 3d 144, 526 N.E.2d 409.) The tenant bears the burden of proving that he did abandon the premises within a reasonable time after the untenantable condition occurred. (*Automobile Supply Co. v. Scene-In-Action Corp.* (1930), 340 Ill. 196, 172 N.E. 35.) If the tenant fails to vacate within a reasonable time, the tenant is considered to have waived the landlord's breach of covenant. (*Dell'Armi Builders, Inc.*, 172 Ill. App. 3d

at 149, 526 N.E.2d at 412; *Automobile Supply Co.*, 340 Ill. at 203.) The reasonableness of a delay is generally a question of fact. *Automobile Supply Co.*, 340 Ill. at 204-05.

■ The untenantable condition in this case first arose in December of 1985. Defendant remained on the leasehold premises until August of 1990, nearly five years after the condition arose and six months after Barretts moved out of the mall. Defendant claims that he remained on the premises for six months after Barretts left because his new store was still under construction. We realize that one factor to be considered in determining the reasonableness of the delay is the time required to find a new location. (*American National Bank & Trust Co. v. Sound City, U.S.A., Inc.* (1979), 67 Ill. App. 3d 599, 385 N.E.2d 144.) Even if the last six months of defendant's occupancy could be excused on this basis, defendant fails to explain why he tolerated the alleged untenantable condition for more than four years. Defendant cites no case, and our research reveals none, where a delay of this length was excused. The trial court relied on *American National Bank & Trust Co. v. Sound City, U.S.A., Inc.* (1979), 67 Ill. App. 3d 599, 385 N.E.2d 144, in finding the delay in this case to be reasonable. However, in that case the constructively evicted tenant remained in possession of the leased premises for only three months.

We also note that defendant entered into a new six-year lease with Carlyle in 1986, nearly two years after Barretts moved in and after defendant threatened to sue Barretts in March of 1985. While defendant claims that he received assurances from Carlyle before he signed the new lease that the noise problem would be taken care of, we believe the fact that defendant had an opportunity to leave the mall in 1986 but instead chose to remain and enter into a new six-year lease is a factor to be considered in our determination of the reasonableness of the delay in this case. In light of the above facts, we find the trial court's determination that defendant did not waive his claim of constructive eviction to be against the manifest weight of the evidence.

We also find that the trial court's determination that Carlyle failed to mitigate the damages caused by defendant's default was against the manifest weight of the evidence. Section 9—213 of the Code of Civil Procedure provides:

> "After January 1, 1984, a landlord or his or her agent shall take reasonable measures to mitigate the damages recoverable against a defaulting lessee." (Ill. Rev. Stat. 1989, ch. 110, par. 9—213.1.)

The statute does not define "reasonable measures to mitigate." The only case which has interpreted this section involved a situation where a landlord sought a higher rent after default and failed to relet the demised premises. (*American National Bank & Trust Co. v. Hoyne Industries, Inc.* (N.D. Ill. 1990), 738 F. Supp. 297.) The court in *Hoyne Industries* held that it is a fact question whether attempts to relet at higher rental rates constitute reasonable efforts to mitigate damages. *Hoyne Industries*, 738 F. Supp. at 302; see also *MBC, Inc. v. Space Center Minnesota, Inc.* (1988), 177 Ill. App. 3d 226, 532 N.E.2d 255 (finding efforts to mitigate unreasonable under facts similar to *Hoyne Industries*, although decided as a matter of common law and lease construction rather than under section 9—213.1).

■ The statute was enacted to require landlords to make reasonable efforts to relet premises vacated by defaulting tenants rather than allowing property to stand vacant and collecting rent in the form of damages. Carlyle not only made reasonable efforts to relet the premises vacated by defendant, but did in fact relet the premises to the first available tenant within seven months of defendant's departure. In April of 1991, Carlyle relet the premises to Everything's a Dollar discount store (Dollar). Carlyle relet this space prior to leasing other available spaces in the mall.

Defendant claims that reletting to Dollar was a failure to mitigate damages because Carlyle relet the premises for one-half the amount of rent which defendant paid. Reletting an abandoned space for a rent less than that paid by the defaulting tenant does not constitute a *per se* failure to mitigate damages. Carlyle points out that it could not charge Dollar as much as it had charged defendant because a discount store generates sales at a much lower rate per square foot than a jewelry store. If Carlyle had not relet to Dollar, the premises may have remained vacant, resulting in no mitigation of damages at all. This is not a case where a landlord simply opted to let abandoned property remain vacant and collect rent in the form of damages from a defaulting tenant. Carlyle actively sought and obtained a suitable replacement tenant to occupy the vacant space. This was certainly a reasonable attempt to mitigate the damages caused by defendant's default.

Defendant also argues that reletting to Dollar was a failure to mitigate because, in light of Dollar's lease provision which calls for percentage rent based on sales, the actual amount of rent Dollar will pay during defendant's lease period is too speculative to calculate. Proof of damages is an issue separate and apart from the reasonableness of Carlyle's efforts to mitigate. Moreover, we note that the amount by which Carlyle's damages have been mitigated should be

readily apparent on remand. By the time the issue of damages is decided, the amount of rent paid by Dollar through the duration of defendant's lease agreement should largely be a matter of record.

In summary, we find that defendant waived any claim of constructive eviction by failing to vacate the demised premises within a reasonable time after the rise of the untenantable condition. Defendant therefore breached the lease by abandoning the premises, failing to pay rent and moving to another location within five miles of the mall. We also find that Carlyle took reasonable measures to mitigate its damages. This cause is remanded to the circuit court for a determination of the amount of damages to which Carlyle is entitled.

Reversed and remanded.

BARRY, P.J., and HAASE, J., concur.