In re Jacqueline J. HARTWIG, n/k/a Jacqueline J. Schutz, Debtor.

Bankruptcy No. 95–71434.

United States Bankruptcy Court, C.D. Illinois.

July 13, 1998.

Charles L. McNeil, Mason City, IL, for Debtor.

Nick F. Burgrabe, Lincoln, IL, for Creditor.

John H. Germeraad, Petersburg, IL, Chapter 13 Trustee.

BASIL H. COUTRAKON, Bankruptcy Judge.

## *OPINION*

Before the Court is Debtor's Objection to the unsecured non-priority claim of Lincoln Heritage Investment Corporation ("Lincoln Heritage") in the amount of $16,866.12. An evidentiary hearing was held on June 2, 1998, at the conclusion of which the Court took the matter under advisement.

Debtor filed her voluntary petition pursuant to Chapter 13 of the Bankruptcy Code on August 25, 1994. Debtor listed Lincoln Heritage on her Schedule F—Creditors Holding Unsecured Nonpriority Claims—as having a disputed claim of $13,958.94. On August 29, 1994, the Court sent a Notice of Commencement of Case to Debtor's creditors, indicating that the deadline for filing claims was January 19, 1995. On December 2, 1994, Debtor filed her Modified Chapter 13 Plan, which proposed to pay the Trustee $860 per month for 60 months. The Plan was confirmed on December 21, 1994, and the Order Confirming Plan provided, *inter alia*, that "[t]he Trustee need not file an objection to any late filed claim, but said claim shall be automatically barred except if said creditor obtains an order to the contrary." Order *at* p. 2.

On February 6, 1997, Lincoln Heritage filed its proof of claim in the amount of $16,866.12 and listed the basis for the claim as rent due and owing. On November 18, 1996, Lincoln Heritage filed its Motion to Allow Proof of Claim. Over Debtor's objection, on February 6, 1997, the Court allowed Lincoln Heritage's late-filed claim but subordinated the claim to all timely filed claims. The Order further provided that Debtor would be entitled to fully contest the entire claim if and when it became apparent that there would be funds available from which to pay all or part of Lincoln Heritage's claim.

As a result of a favorable divorce settlement, Debtor was able to pay all of the timely-filed claims early, and her last regular plan payment was made on November 6, 1997. On December 30, 1997, Debtor filed her Objection to Claim of Lincoln Heritage. On June 2, 1998, an evidentiary hearing was held in this matter.

The facts in this case are not in serious dispute. On February 1, 1990, Debtor entered into a lease with Lincoln Heritage for a commercial space in a strip mall located at 1220 Woodlawn Road, Lincoln, Illinois. Debtor ran Sunspot Tanning Spa in that location until she vacated the premises on July 31, 1994. At some point in time after taking possession, Debtor began experiencing problems with the premises, particularly with the roof. According to Debtor, in the spring of 1992, the roof began leaking in no fewer than four places. Debtor contacted Glendean Garrison, the property manager, to advise of the problem, and the roof was patched at that time. In March, 1993, the roof again began to leak and, although some patchwork was performed, the problem was never fully corrected to the satisfaction of Debtor. In addition, Debtor identified certain other problems with the premises which arose at or around that time, including a broken window, a broken door, holes in the parking lot, and unsightly weeds and trash in and around the parking lot. There were also several other minor aesthetic and functional complaints.

For much her tenancy, Debtor did not pay her rent. In fact, after September, 1992, Debtor never made a full rent payment. At the time she vacated the premises, Debtor's rent arrearage was $16,866.12, the amount for which Lincoln Heritage's proof of claim was filed.

In objecting to the claim of Lincoln Heritage, Debtor argues that she was constructively evicted from the premises and that her obligation to pay rent for the premises was therefore relieved. Debtor correctly points out that the lease between the parties provides that Lincoln Heritage was required to keep the roof in good repair. Debtor contends that Lincoln Heritage failed in that regard and that the frequently-leaking roof, along with all of the other problems, prevented her from being able to profitably operate her tanning spa business, which resulted in her constructive eviction from the premises.

■ Constructive eviction is defined as "something of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the premises." *Gillette v. Anderson,* 4 Ill. App.3d 838, 842, 282 N.E.2d 149, 151–52 (1972) *citing Morgan v. Cook,* 213 Ill.App. 172, 175 (1919); *Estate of Corbin v. McKey and Poague, Inc.,* 105 Ill.App.2d 120, 245 N.E.2d 117, 118 (1969). There can be no constructive eviction, however, without the vacating of the premises. *Gillette, supra,* 4 Ill.App.3d at 838, 282 N.E.2d at 152; *Automobile Supply Co. v. Scene–In–Action Corp.,* 340 Ill. 196, 201, 172 N.E. 35, 38 (1930). The burden of showing that the vacation of the leased premises took place in a reasonable time is on the tenant. *Automobile Supply Co.,* 340 Ill. at 203, 172 N.E. at 38; *JMB Properties Urban Co. v. Paolucci,* 237 Ill. App.3d 563, 566, 178 Ill.Dec. 444, 446, 604 N.E.2d 967, 969 (1992) (citation omitted), *appeal denied* 148 Ill.2d 643, 183 Ill.Dec. 21, 610 N.E.2d 1265 (1993). Whether the abandonment was within a reasonable time is ordinarily a question of fact dependent on the circumstances of each case. *Automobile Supply Co.,* 340 Ill. at 202, 172 N.E. at 38.

■ Where a tenant fails to surrender possession after the landlord's commission of acts justifying the abandonment of the premises, the liability for rent will continue so long as possession of the premises is contin-

ued. *Id.,* 340 Ill. at 201–02, 172 N.E. at 38 (citations omitted); *accord Zion Industries, Inc. v. Loy,* 46 Ill.App.3d 902, 906, 5 Ill.Dec. 282, 361 N.E.2d 605, 608 (1977). Although a reasonable time in which to vacate is afforded the commercial tenant, the duty to pay rent is not suspended while the tenant continues to occupy the premises. *City of Chicago v. American National Bank,* 86 Ill. App.3d 960, 963, 42 Ill.Dec. 1, 408 N.E.2d 379, 381 (1980).

■ Based upon the facts in this case, the Court finds that the Debtor was not constructively evicted from the subject premises for three reasons. First, the Court cannot find that the landlord's omissions were of a sufficiently serious or permanent character which would deprive the Debtor of possession. In fact, the Court finds that the only colorable complaint of substantial magnitude raised by Debtor pertained to the leaking roof. The other matters, e.g. a broken window, a broken door, holes in the parking lot, and weeds and trash in and around the parking lot, did not rise to the required level of seriousness to constitute grounds for a claim of constructive eviction. This conclusion is supported by Lincoln Heritage's records of maintenance on the property which illustrate that the subject premises and surrounding area were not neglected. Glass repairs were made to the subject premises and the parking lot was completely resurfaced at a cost of $10,798 in July 1992. That being said, the Court is not unsympathetic to the Debtor; she was a credible witness with legitimate complaints about the subject premises. However, while the Court agrees that the subject premises were not maintained as well as they could have been and perhaps should have been, the Debtor continued to operate her business, and there was no evidence that the business was forced to cease operating at any time as a result of these problems. While the structural and aesthetic conditions of the physical premises may have been far less than ideal and may, in fact, have driven some customers away, the Court cannot find that the problems rose to the level required to constitute a constructive eviction.

■ Secondly, the Debtor's abandonment of the subject premises did not occur within a reasonable time. In testimony, Debtor indicated that the problems with the roof began in the spring of 1992. Debtor further indicated that problem seemed to be remedied until the spring of 1993, at which time the leaking began again as bad or worse than it had been in the spring of 1992. Debtor remained in the premises until July 31, 1994. To whatever extent the leaking roof could constitute a basis for a constructive eviction, it is unreasonable for the Debtor to have identified the problem, yet continued to operate her business and remain in the premises for over a year before vacating. There was no evidence to suggest either that Debtor began actively searching for another location for her business in 1993, or that there was some circumstance, e.g. the unavailability of suitable alternative commercial space in the Lincoln area, which would have prevented her from relocating her business in a short period of time. In fact, Debtor offered no explanation as to why she remained in the premises after these problems became persistent and remained unremedied to Debtor's satisfaction.

■ Finally, and perhaps most importantly, even if the conditions of the premises were sufficiently "grave and permanent in character" to constitute a constructive eviction, Debtor remained obligated to make her monthly rental payments until she physically vacated the premises. Debtor did not fulfill this obligation. However, under the Illinois Supreme Court's holding in *Automobile Supply Co. v. Scene–In–Action Corp., supra,* Debtor had no legal right to withhold rental payments even if she had been constructively evicted unless and until she physically vacated the premises. As all of Lincoln Heritage's claim for back rent consists of rent which accrued while Debtor remained in possession of the subject premises, the claim must be found to be valid in its entirety.

For the reasons set forth above, Debtor's objection to Claim #15 filed on behalf of Lincoln Heritage is denied. In order to successfully complete her Chapter 13 Plan, Debtor shall be required to file an Amended Chapter 13 Plan which will provide for pay-

ment of the greater of (i) all of Debtor's disposable income through November 1999 (the month in which the plan was proposed to end), or (ii) so much of Debtor's disposable income as is required to pay the claim of Lincoln Heritage in full (plus Trustee's fees and expenses, if applicable) minus any funds previously paid by Debtor to the Trustee which are presently being held by the Trustee. Debtor should file any necessary amendments to her bankruptcy schedules at the same time.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ORDER

For the reasons set forth in an Opinion entered this day,

IT IS THEREFORE ORDERED that the Debtor's Objection to Claim #15 filed by Lincoln Heritage Investment Corporation be and is hereby denied.

IT IS FURTHER ORDERED that, within 14 days of the date of this Order, Debtor shall file (a) an Amended Chapter 13 Plan which will provide for payment of the greater of (i) all of Debtor's disposable income through November 1999 (the month in which the plan was proposed to end), or (ii) so much of Debtor's disposable income as is required to pay the claim of Lincoln Heritage in full (plus Trustee's fees and expenses, if applicable) minus any funds previously paid by Debtor to the Trustee which are presently being held by the Trustee, and (b) any necessary amendments to her bankruptcy schedules.